Filed 5/13/21  R Consulting & Sales v. Kim CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| R CONSULTING & SALES, INC., <br><br> Plaintiff, Cross-defendant and Respondent, <br><br> v. <br><br> ANDY KIM, <br><br> Defendant, Cross-complainant and Appellant. | D076749 <br><br><br> (Super. Ct. No. 37-2015-00002561-CU-BC-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Kenneth J. Medel, Judge.  Affirmed in part and reversed in part; remanded with instructions.

One and Peter R. Afrasiabi; Law Office of Kathryn M. Davis and Kathryn M. Davis; and Paul N. Tauger, for Defendant, Cross-complainant, and Appellant.

Metsch & Mason; Michael J. Mason and Paul S. Metsch, for Plaintiff, Cross-defendant and Respondent.

Defendant Andy Kim[1] appeals the trial court order (1) awarding plaintiff R Consulting & Sales, Inc. (R Consulting) postjudgment attorney fees of $387,464.50; and (2) denying his motion to modify a January 17, 2018 salary turnover order, as amended on April 17, 2019 (collectively, turnover order).

Kim contends the trial court abused its discretion by including in the fee award work performed by counsel of R Consulting that was not compensable. Kim objected to multiple billing entries of R Consulting's counsel including on the grounds that counsel impermissibly "block billed" (i.e., listing all tasks performed and the total time spent on the litigation on a particular day, but not specifying the time spent on a particular task) and made substantial redactions to myriad entries. In light of the block billing, Kim further contends that the redactions made it impossible to discern whether counsel's work was reasonable and necessary for enforcement of the judgment; and that the court thus erred in awarding R Consulting *all* of the attorney fees it sought.

Kim on appeal also contends the court erred in denying his motion to modify the turnover order by allegedly ignoring both uncontested evidence showing a change of circumstances in his earnings since the turnover order became effective, and South Korean law that prevented him from complying with that order. For the first time on appeal, he further contends the court lacked the authority to accept his consent to the terms of the turnover order.

---

1     Info Tech Corporation (Info Tech) was initially named as an appellant in this case. On October 19, 2020, R Consulting moved to dismiss the appeal of Info Tech because it allegedly lacked the legal capacity to defend an action in California. On October 29, Info Tech filed a notice of dismissal of its appeal. The following day, on this court's own motion we dismissed the appeal only as to Info Tech and denied as moot R Consulting's motion to dismiss.

As we explain, we agree with Kim that the court abused its discretion when it included in the fee award amounts from billing entries that were so heavily redacted it was difficult, if not impossible, to determine what work was performed by counsel of R Consulting and thus, whether it was reasonable and necessary to enforce the judgment. In reaching our decision, we note the record is bereft of evidence to support the need for such redactions, including on the basis of privilege, as R Consulting generally claimed without analysis or explanation. We therefore reverse the attorney fees award in favor of R Consulting to allow the trial court on remand to reconsider that award in light of this opinion.

As we also explain, we conclude the court did not abuse its discretion in denying Kim's motion to modify the turnover order. We also conclude Kim forfeited his contention that the court allegedly circumvented this state's wage garnishment law by issuing the turnover order in the first place.

OVERVIEW

Prior Appeal

This is the second time this case has been before this court. On January 18, 2019, this court affirmed a judgment in favor of R Consulting for over $2.4 million against Info Tech and Kim after a default prove-up hearing. (See *R Consulting & Sales Inc. v. Info Tech Corporation et al.* (Jan. 18, 2019, D072492 [nonpub. opn.]) (*R Consulting I*).) Prior to the prove-up hearing, the trial court had issued a terminating sanction order dismissing the cross-complaint of Info Tech and Kim and striking their answer, finding they had intentionally destroyed potential evidence in contravention of R Consulting's right to discovery and the trial court's previous orders.

By way of brief background, R Consulting in January 2015 sued Info Tech and Kim for breach of an agreement to lease a private jet by failing to

3

make the required payments. R Consulting also alleged that Info Tech and Kim contracted with vendors to perform services on the aircraft and provide supplies; that they failed to pay the vendors; and that R Consulting would be forced to make those payment to prevent liens being placed on the aircraft. (*R Consulting I*, at pp. 1–2.) In April 2015, Info Tech and Kim cross-complained alleging inter alia that R Consulting defrauded them by making false representations about the aircraft. (*Ibid.*)

A discovery dispute ensued between the parties after R Consulting moved to compel compliance with inspection demands including alleged missing e-mails from servers belonging to Info Tech and Kim. After issuing monetary sanctions against Info Tech and Kim, the court set a motion for terminating sanctions after an expert of R Consulting concluded that Info Tech and Kim had intentionally sabotaged their servers to prevent R Consulting from obtaining the e-mails and other documents necessary to prosecute its complaint and defend the cross-complaint. (*R Consulting I*, at p. 6.)

The court tentatively granted terminating sanctions and later confirmed its ruling after oral argument. (*R Consulting I*, at p. 7.) In so doing, the court found that Info Tech and Kim "have tampered with the servers such that useful data is no longer recoverable from the servers. The Court can make no other conclusion but this was willful and designed to avoid providing evidence in this action. This conduct is not only in violation of discovery obligations but contravenes this Court's orders since June, 2016. The Court thus GRANTS terminating sanctions against [Info Tech and Kim]. The Court does not see any less restrictive remedy given the nature and scope of the 'missing evidence' in this matter." (*Id.* at p. 25.)

In affirming the judgment, we concluded in *R Consulting I* that substantial evidence supported the trial court's finding that Info Tech and Kim had willfully tampered with their servers rendering it impossible to recover any useful data from them. (*R Consulting I*, at p. 29.)

Current Dispute

*Turnover Order*

In September 2017, R Consulting filed a motion seeking an order requiring Kim to turnover on a continuing basis copies of his paychecks and paystubs and pay R Consulting 25 percent of his disposable income from three companies he was affiliated with: Emajee, Inc. (Emajee), Outsourced Solutions, Inc. (Outsourced Solutions), and IT Source Korea (sometimes collectively, Companies). R Consulting argued such an order was necessary because the Companies for which Kim "works, as either an employee or contractor, are mere shells and shams, making the use of California's wage garnishment law ineffective to affect wage garnishment orders directed at Kim's 'employers.' "

In support of its motion, R Consulting noted that under "normal circumstances" it would avail itself of wage garnishment law to compel the Companies "to deliver 25 [percent] of Kim's disposable earnings on a regular basis to the levying officer until the Judgment is satisfied. [¶] In this case, however, the traditional means of wage garnishment, via California's wage garnishment law, will not be effective to cause Kim's 'employers' to transfer to the levying officer the amounts to which R Consulting is entitled because Kim's 'employers' are sham companies. Indeed, only an order that compels Kim himself, not his 'employers,' to deliver to R Consulting 25 [percent] of his disposable earnings, on a continuing basis, would be effective." (Emphasis omitted in original.) R Consulting supported its motion by relying on Kim's

5

testimony from his August 25, 2017 debtor's exam, documentary evidence, and the deposition testimony of Kerry Park, an officer of one of the Companies.

At his debtor's exam, Kim testified he was the vice-president of Emajee, but he did not know the name of the president of the company. However, Park testified at Info Tech's debtor's exam that he neither knew the identities of the officers of Emajee nor the business of the company, even though he was identified as its president. R Consulting proffered evidence showing Emajee's corporate address was a commercial mailbox facility in Las Vegas, Nevada known as " 'Mail Link,' " which was the same address that was on file with the California Secretary of State. R Consulting argued that Emajee therefore had no physical location for a levying officer to personally serve a wage garnishment order.

Kim testified he worked as a sales manager for Outsourced Solutions. R Consulting proffered evidence showing Outsourced Solutions paid the monthly rent for Kim's home located on Fremont Avenue in Los Angeles, where he sometimes resided with his mother. This evidence included a copy of the rental agreement, showing the monthly rent was $14,000.

Kim testified that he did not know who owned the Fremont home; that he did not know who paid the rent on the home, but assumed it was probably his mother; and that he did not know how much it cost to rent the home. In response to Kim's sworn testimony, R Consulting in support of its motion lodged a copy of a check signed by Kim dated June 19, 2017, payable to the owner of the Fremont home. R Consulting argued this evidence showed that, similar to Emajee, Outsourced Solutions was a sham company controlled by Kim; and that it also could not be relied upon to comply with a wage garnishment order.

6

Kim also testified that he was one of two officers of IT Source Korea; that he was unsure of the full name of the other officer; and that when in South Korea, he met with this other officer "[o]nce in a while." As was the case with Emajee and Outsourced Solutions, R Consulting argued that IT Source Korea could not be relied upon to comply with a wage garnishment order; and that, in any event, enforcement of such an order would be impractical because the company was headquartered in South Korea.

Kim in response to the motion filed a notice of "Non-Opposition," providing as follows: "PLEASE TAKE NOTICE that Judgment Creditor R Consulting . . . and Judgment Debtor Andy Kim . . . have *agreed* to enter into a Stipulation and Order regarding turnover and assignment orders relating to Kim's salaries ('Stipulation'). However, as of the date of filing of this Notice of Non-Opposition, Kim has not executed the Stipulation, and the Stipulation has thus not been filed. Counsel for R Consulting will inform the Court's clerk once Kim executes the Stipulation, so that R Consulting's motion for a turnover order and assignment order regarding Kim's salaries can be taken off-calendar." (Italics added.)

In the turnover order issued on January 17, 2018, the court noted that a hearing on R Consulting's motion had taken place on October 20, 2017, (which was, like all others in this case, unreported); that "both parties indicated a stipulation ha[d] been reached and the Court [had] GRANTED the motion"; and that the parties appeared ex parte on January 11, 2018 "disputing portions of the stipulation." The court in its January 17 order agreed with R Consulting that the "typical garnishment procedure compelling 'employers' to deliver to the levying officer the required amounts under a garnishment order is not workable in this case given the evidence presented regarding the companies." The court found that it had authority to require

7

Kim to assign 25 percent of his disposable earnings under Code of Civil Procedure[2] sections 187[3] and 708.510.[4]

The turnover order provides as follows: "1. Commencing on February 1, 2018, and continuing each month thereafter until the Judgment is satisfied, Kim will pay directly to R Consulting 25% of his 'disposable earnings,' as defined by . . . section 706.011(a), which defines 'disposable earnings' as 'the portion of an individual's earnings that remains after deducting all amounts required to be withheld by law[,]' before the fifteenth calendar day of each month from IT Source Korea, Emajee, Inc., and Outsourced Solutions, Inc. (collectively, the 'Monthly Payments');

"2. Kim testified at his Judgment Debtor's Exam that he earns the following annual salaries from the three companies: $40,000 per year from

---

[2]    Unless noted otherwise, all further statutory references are to the Code of Civil Procedure.

[3]    Section 187 provides: "When jurisdiction is, by the Constitution or this Code, or by any other statute, conferred on a Court or judicial officer, all the means necessary to carry it into effect are also given; and in the exercise of this jurisdiction, if the course of proceeding be not specifically pointed out by this Code or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this Code."

[4]    Section 708.510, subdivision (a) provides: "Except as otherwise provided by law, upon application of the judgment creditor on noticed motion, the court may order the judgment debtor to assign to the judgment creditor or to a receiver appointed pursuant to Article 7 (commencing with Section 708.610) all or part of a right to payment due or to become due, whether or not the right is conditioned on future developments, including but not limited to the following types of payments: [¶] (1) Wages due from the federal government that are not subject to withholding under an earnings withholding order. [¶] (2) Rents. [¶] (3) Commissions. [¶] (4) Royalties. [¶] (5) Payments due from a patent or copyright. [¶] (6) Insurance policy loan value."

8

Emajee, Inc.; $35,000 per year from IT Source Korea and $30,000 per year from Outsourced Solutions, Inc.  Thus, Kim, is ordered to turn over annually $10,000 from Emajee, Inc. salary; $8750 from IT Source Korea salary and $7500 from Outsourced Solutions, Inc. salary[;]

"3. Before February 1, 2018, Kim will provide to R Consulting an accounting of the exact amounts that are required under paragraph two (2) from each of Kim's bi-weekly or monthly direct deposit amounts or paychecks from IT Source Korea, Emajee, Inc., and Outsourced Solutions, Inc.;

"4. Commencing on February 1, 2018, and continuing each month thereafter until Judgment is satisfied, Kim will provide to R Consulting copies of his bi-weekly or monthly direct deposit slips or paystubs and paychecks before the fifteenth calendar day of each month from IT Source Korea, Emajee, Inc., and Outsourced Solutions, Inc.[;]

"5. If Andy Kim has paid tax arising out of monies earned from IT Source Korea and transferred from South Korea to the United States, Andy Kim can seek the Court to have a credit against the judgment for any such taxes paid.  Andy Kim can seek that relief ex parte and the Court will determine if sufficient proof of taxes has been offered and what, if any credit, should apply to the judgment; and

"6. The monies paid by Kim to R Consulting under this Stipulation and Order will be credited against the Judgment, taking into account accrued interest on the Judgment at the time each monthly payment is made."

As noted, the turnover order was amended on April 17, 2019, to add the following language:  "7. Failure to comply with this order may subject the judgment debtor, Andy Kim, to arrest and punishment for contempt of court." (Emphasis in original omitted.)

9

In September 2018, R Consulting sought to enforce the turnover order and an order requiring Kim to appear for his continued debtor's exam. R Consulting contended Kim had "deliberately and repeatedly" failed to comply with the turnover order including paying R Consulting 25 percent of his disposable earnings; providing copies of pay records from the Companies; and providing an accounting of the amounts that were to be withheld from his bi-weekly or monthly direct deposits or paychecks from the Companies.

The minute order from the September 12, 2018 hearing shows the court ordered Kim to provide pay and accounting records from the Companies by a date certain; to comply with "all orders regarding all payments to R Consulting"; and to appear at his continued judgment debtor exam on October 12, 2018.

*R Consulting's Motion for Attorney Fees*

Following this court decision in *R Consulting I*, in April 2019 R Consulting filed a postjudgment motion seeking $387,464.50 in attorney fees, including under sections 685.040[5] and 685.070.[6] This motion sought fees from May 1, 2017 forward, as the trial court already had awarded R Consulting attorney fees it incurred through April 2017 in connection with the judgment and prove-up hearing that were the subject of *R Consulting I*.

In support of its motion, R Consulting lodged about 65 pages of its attorney invoices with an accompanying one-page spreadsheet. The invoices

---

[5] This statute provides in part: "Attorney's fees incurred in enforcing a judgment are included as costs collectible under this title if the underlying judgment includes an award of attorney's fees to the judgment creditor. . . ."

[6] Subdivision (a)(6) of this statute provides in part: "The judgment creditor may claim under this section the following costs of enforcing a judgment: [¶] . . . [¶] (6) Attorney's fees, if allowed by Section 685.040."

10

show R Consulting's counsel Michael Mason charged $295 an hour and Paul Metsch $395 an hour.[7] The invoices included without explanation substantial redactions to myriad billing entries. Each entry included the date, the work allegedly done in "block" format, the attorney who performed the work and his billing rate, and the total time spent by each attorney to complete a day's work (but not each task performed on that particular date).

Kim in his opposition argued R Consulting was not entitled to attorney fees for its counsel's work on *R Consulting I* because the appeal allegedly was not part of the enforcement of judgment process. Kim also argued R Consulting was not entitled to recover fees for billing entries that were either completely or substantially redacted, claiming it was impossible to determine in those circumstances what work was done by R Consulting's counsel, particularly when counsel had block billed their time instead of billing for each task performed on a specific date. Kim also made various other objections to the billing entries, including on the grounds the time spent by counsel was excessive, unnecessary, and unrelated to the enforcement of the judgment. Kim lodged his objections in the margin of the billing invoices he disputed, and explained in detail in his opposition papers the basis for his objections.

R Consulting in its reply provided in brackets a brief, one or two sentence response to some, but not all, of Kim's objections to the billing entries. In many instances R Consulting responded the redactions were necessary to protect "Privileged information," without identifying the

---

[7]    The invoices show these two attorneys charged the same hourly rate throughout the postjudgment litigation. We note in opposing the attorney fees award Kim did not challenge the hourly rates charged by R Consulting's counsel.

11

privilege relied on or explaining why the redacted information allegedly was privileged.

In its reply papers, R Consulting's entire response to Kim's objection to the redacted billing entries was limited to the following: "R Consulting's redactions relate either to privileged information, to which Judgment Debtor[s] are absolutely not entitled (such as the subject of legal research), or to matters either unrelated to the enforcement of the Judgment or the appeal [in *R Consulting I*]. In the latter case dealing with unrelated matters, R Consulting did not include its attorneys' fees incurred in its fee total. [Citations.] There is simply no legal or factual basis for Judgment Debtors' objections to the redactions."

Mr. Mason also submitted a short declaration in support of R Consulting's reply. He stated that certain of the billing entries in the invoices had been completely redacted because R Consulting had not sought compensation for that work; that the fees sought by R Consulting were not excessive in light of Kim's repeated failure to comply with the turnover order; and that as of August 2019, Kim had only paid about $1,300 in satisfaction of the judgment, and had failed to provide monthly pay records as required under that order. Mr. Mason, however, did *not* explain why certain redactions had been made to the billing invoices, including based on privilege.

*Kim's Motion to Modify the Turnover Order*

In April 2019, Kim moved ex parte to modify the turnover order. Kim argued that because he was spending more time in South Korea, he was receiving less income from Emajee and Outsourced Solutions; that although the turnover order recited his annual salaries from both companies was between $30,000 to $40,000, this figure was inflated and did not accurately

12

represent the income he was then earning from either company; and that he therefore was unable to comply with the turnover order.

Kim also argued ex parte relief was necessary because South Korean law prevented him from complying with some of the terms of the turnover order; and that he was "in the process of identifying and retaining an expert on Korean/American tax and money repatriation law, so that [he could] legally account for his income from IT Source-Korea." The record shows the court recognized Kim sought "emergency relief" but nonetheless continued the hearing on Kim's modification request to August 23, 2019, ordering Kim to comply with the turnover order pending the outcome of that hearing.

R Consulting in its opposition to Kim's modification request argued that Kim was "misrepresenting/hiding his income" in violation of the turnover order, and that he also was violating several other orders issued by the court. R Consulting also argued that Kim presented no new facts to support his modification request; and that to modify the turnover order would reward Kim for his "evasiveness," "lack of candor," and "attempt[s] to mislead th[e] Court."

Regarding its allegation that Kim was misrepresenting/hiding his income, R Consulting noted Kim in September 2018 had "gambled $10,000 of his own money" in Las Vegas, which money was "deposited and withdrawn from his personal bank account . . . on September 17, 2018 (not in the name of one of his approximately 13 'companies' . . .)"; that Kim "even applied for additional credit, in his own name, at the . . . [c]asino during his gambling trip"; and that in February 2019, he deposited $8,750 into this same bank account. R Consulting in support of its opposition lodged as exhibits copies of Kim's personal bank account statements and records from the casino— including the credit agreement.

13

R Consulting further argued that Kim's claim of having Korean "tax issues" with respect to IT Source Korea was nothing new, as this issue had previously been raised by him; that his delay in addressing this issue was purposeful and tactical; and that his claim he also was concerned about complying with United States tax laws was belied by his sworn deposition testimony that he allegedly had not filed "personal taxes in California or with the IRS since 2008." (Emphasis in original omitted.)

In his reply to the opposition to modify the turnover order, Kim argued that "(1) Korean law precludes repatriation of money for foreign residents until their yearly tax obligation has been settled, which makes monthly payments from [his] IT Source Korea salary illegal under Korean Law, and (2) the Turn Over Order specifies a yearly 'minimum' based on Mr. Kim's testimony from two years ago as to his salaries. However, Mr. Kim's financial circumstances have changed since then and he respectfully requests that the Turn Over Order reflect that change." Kim's reply included a letter from his accountant addressing why it was "illegal" for him to make monthly payments from his IT Source Korea earnings to R Consulting.

In support of his reply, Kim also filed the declaration of counsel Paul Tauger who, under penalty of perjury, declared he was a salaried employee and in-house counsel of Emajee; was paid bi-weekly by Emajee from an Emajee bank account; and was neither paid by Kim nor was he Kim's personal attorney. Mr. Tauger further stated that he had brought an action for malicious prosecution against R Consulting and its counsel because of their "completely frivolous criminal contempt proceeding" against Kim; and that Kim had complied with the court's other orders, including providing counsel of R Consulting with translated copies of Kim's employment agreements with Emajee, Outsourced Solutions, and Info Tech.

14

Kim in reply also submitted a declaration under penalty of perjury. With respect to the $10,000 he gambled in Las Vegas, he stated this money was "repayment for a personal loan" he had made "years ago"; adding, "It came as a complete surprise to me when it was repaid, and I treated it as an unexpected windfall." He stated that his income then was derived primarily from IT Source Korea; that in 2019 he earned "nothing from either Outsourced Solutions or Emajee" except $8,300, which, he claimed, "was subject to a court order issued by a court in another state"; that the other state's law prevented him from disseminating this particular order to R Consulting or its counsel; but that he was willing to produce this order for the court to review in camera.

*Court's Order*

On August 23, 2019, the minute order noted the court heard oral argument on R Consulting's attorney fees motion and Kim's request to modify the turnover order. The minute order noted the court took the matter under submission.

On August 28, the court issued its order that is the subject of this appeal. In that order, the court without explanation denied Kim's request to modify the turnover order. In this same order, the court granted R Consulting's motion for attorney fees, awarding R Consulting *all* the fees it had sought in its motion. The court order provided: "The Court finds the underlying judgment includes an award of attorney's fees to R Consulting, entitling R Consulting to its post-Judgment attorneys' fees under . . . sections 685.040 and 685.070(a)(6). The Court also finds that a remittitur issued on

4/25/19 [in *R Consulting I*] indicates that the respondent[8] is to pay the costs of appeal. Based upon contract, those costs would include attorney fees. See Starpoint Properties, LLC v. Namvar (2011) 201 Cal.App.4th 1101. The Court orders additional attorney fees in the amount of $387,464.50."

DISCUSSION

I

Notice of Appeal

As a threshold matter, R Consulting contends Kim's appeal should be dismissed because he allegedly failed in his timely September 30, 2019 notice of appeal to identify with particularity the order or orders he was appealing. R Consulting further contends Kim's notice was insufficient because Kim stated he was appealing from an order entered on August 30, 2019, when there was no order entered on that date.

California Rules of Court, rule[9] 8.100(a)(2) provides in part: "The notice of appeal must be liberally construed. The notice is sufficient if it identifies the particular judgment or order being appealed." "Rule 8.100(a)(2)'s liberal construction requirement reflects the long-standing ' "law of this state that notices of appeal are to be liberally construed so as to protect the right of appeal if it is reasonably clear what [the] appellant was trying to appeal from, and where the respondent could not possibly have been misled or prejudiced." ' (*In re Joshua S.* (2007) 41 Cal.4th 261, 272; see *Luz v. Lopes* (1960) 55 Cal.2d 54, 59.) The rule is intended to 'implement the

8    The court's August 28 order misstates the disposition in *R Consulting I*, as it provided: "The judgment is affirmed. Respondent is entitled to its costs on appeal." (*R Consulting I*, at p. 30.) Kim was the appellant and R Consulting the respondent in *R Consulting I*.

9    All further references to rules are to the California Rules of Court.

16

strong public policy favoring the hearing of appeals on the merits.' " (*K.J. v. Los Angeles Unified School Dist.* (2020) 8 Cal.5th 875, 882 (*K.J.*).)

Here, the record shows Kim checked the box on Judicial Council form APP-002 stating he was appealing from "[a]n order after judgment under Code of Civil Procedure, § 904.1(a)(2)."[10] The record also shows Kim attached to the notice of appeal the court's August 28, 2019 order *both* granting R Consulting's motion for attorney fees *and* denying his modification request.

Liberally construing Kim's notice of appeal and incorporating by reference the court's August 28 minute order, we conclude his notice satisfies rule 8.100(a)(2), as it identifies the particular order being appealed; there is no "clear intention" he sought to appeal only one of the two separate orders in the August 28 minute order (compare *Baker v. Castaldi* (2015) 235 Cal.App.4th 218, 225–226 [noting the " 'rule favoring appealability in cases of ambiguity cannot apply where there is a clear intention to appeal from only . . . one of two separate appealable judgments or orders' "]); and R Consulting could " ' "not possibly have been misled or prejudiced" ' " by Kim's notice. (See *K.J.*, *supra*, 8 Cal.5th at p. 882.)

---

10 Section 904.1, subdivision (a) provides in relevant part: "An appeal, other than in a limited civil case, is to the [C]ourt of [A]ppeal. An appeal, other than in a limited civil case, may be taken from any of the following: [¶] (1) From a judgment, except an interlocutory judgment, other than as provided in paragraphs (8), (9), and (11), or a judgment of contempt that is made final and conclusive by Section 1222. [¶] (2) From an order made after a judgment made appealable by paragraph (1)."

II

Attorney Fees

A. *Guiding Principles*

" 'California follows what is commonly referred to as the American rule, which provides that each party to a lawsuit must ordinarily pay his [or her] own attorney fees.' (*Trope v. Katz* (1995) 11 Cal.4th 274, 278; . . . § 1021 ['[e]xcept as attorney's fees are specifically provided by statute, the measure and mode of compensation of attorneys . . . is left to the agreement, express or implied, of the parties'].)" (*Jones v. Goodman* (2020) 57 Cal.App.5th 521, 532 (*Jones*).) As noted, section 685.040 provides for an award of attorney fees in this case.[11]

"[T]he fee setting inquiry in California ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate." (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095 (*Drexler*).) "The lodestar figure may then be adjusted, based on

---

[11] As noted, the parties dispute whether R Consulting is also entitled to a contractual award of attorney fees under Civil Code section 1717 in connection with the *R Consulting I* appeal. Section 24 of the parties' lease agreement provides: "The parties acknowledge that this Lease and the enforcement thereof will be governed by and construed and enforced in all respects in accordance with the laws of the County of San Diego, State of California, without reference to its conflicts of law rules. *Loosing* [*sic*] *party pays attorney's fees*." (Italics added.) Civil Code section 1717 provides in part: "(a) In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs." In light of our decision in this case, we deem it unnecessary to decide, and thus offer no opinion on, this issue.

consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal services provided." (*Ibid.*)

The party seeking fees and costs " ' "bear[s] the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." ' " (*Roth v. Plikaytis* (2017) 15 Cal.App.5th 283, 290 (*Roth*).) " 'California courts do not require detailed time records, and trial courts have discretion to award fees based on declarations of counsel describing the work they have done and the court's own view of the number of hours reasonably spent. [Citations.]' " (*Syers Properties III, Inc. v. Rankin* (2014) 226 Cal.App.4th 691, 698.) "In making its calculation, the court may rely on its own knowledge and familiarity with the legal market, as well as the experience, skill, and reputation of the attorney requesting fees." (*569 East County Boulevard LLC v. Backcountry Against the Dump, Inc.* (2016) 6 Cal.App.5th 426, 437.)

Once the moving party meets its burden, the burden shifts to the opposing party "to present specific objections, supported by rebuttal evidence." (*Roos v. Honeywell Internat., Inc.* (2015) 241 Cal.App.4th 1472, 1494, disapproved on another ground as stated in *Hernandez v. Restoration Hardware, Inc.* (2018) 4 Cal.5th 260, 287; see *Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 101 [noting the "party opposing the fee award can be expected to identify the particular charges it considers objectionable"].)

" 'Generally, a trial court's . . . award of fees and costs . . . is reviewed for abuse of discretion.' (*Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1332; see *Castro v. Superior Court* (2004) 116 Cal.App.4th 1010, 1017 ['the propriety or amount of an attorney fees award is reviewed using the abuse of discretion standard'].) However, the standard may change depending on the

19

particular issue under review. ' "We independently review any legal issue regarding the appropriate criteria for a fee award. But once those criteria are identified, we defer to the trial court's discretion in determining how they are to be exercised. [Citation.] In fashioning an equitable remedy, the trial court is in the best position to determine whether the criteria for a fee award have been met. We will not disturb its judgment on this issue unless we are convinced the court abused its discretion. [Citation.] A trial court abuses its discretion only where its action is clearly wrong and without reasonable basis." ' (*Powell v. Tagami* (2018) 26 Cal.App.5th 219, 236–237 (*Powell*).) To the extent a trial court's ruling is based on factual determinations, we review the record for substantial evidence. (*Carpenter & Zuckerman, LLP v. Cohen* (2011) 195 Cal.App.4th 373, 378. . . .) ' "We look at the evidence in support of the trial court's finding, resolve all conflicts in favor of the respondent and indulge in all legitimate and reasonable inferences to uphold the finding." ' (*Ibid.*)" (*Jones, supra*, 57 Cal.App.5th at pp. 532–533.)

B. *Analysis*

As the party seeking an attorney fees award, R Consulting had the burden of documenting the lodestar, that is the number of hours counsel reasonably expended multiplied by counsel's reasonable hourly rate.[12] (See *Drexler, supra*, 22 Cal.4th at p. 1095.) Although detailed time records are not required, here the attorney invoices R Consulting lodged in support of its motion were redacted to such an extent that we agree with Kim that it is nearly impossible in several of the billing entries to determine what work counsel performed. (See *Roth, supra*, 15 Cal.App.5th at p. 290 [the party seeking attorney fees bears the burden to document the work done and fees

_____

[12] As noted *ante*, Kim has not challenged the hourly rates billed by counsel of R Consulting.

20

charged].)  In addition, R Consulting neither explained in any detail why so many redactions were made to the billing entries, including on the basis of privilege, nor did it submit unredacted invoices for the court's in camera review.  (See *ibid.*)

As noted *ante*, the attorney invoices are for counsel's work between May 1, 2017 and January 31, 2019.  By way of example only (with the ellipsis representing the redacted information), the billing entry for May 10, 2017, provides:  "Research regarding . . . review . . . ; phone calls from and to . . . regarding . . . research regarding . . . prepare subpoena . . . several emails from and to . . ."  For this entry, Mr. Mason billed 5:30 hours (at $295 an hour, as noted) for a total fee of $1,622.50.  The record shows Kim objected to this entry on the basis of "Block Billing" and "Redaction," arguing it was not possible to determine the work done by counsel and whether that work was necessary to enforce the judgment as required for an award under section 685.040.

In its reply, R Consulting responded the redactions to the May 10 entry involved "Privileged information."  As noted, R Consulting did not explain either in its moving or reply papers what privilege it was invoking or why this information allegedly was privileged.

As a further example, on May 11, 2017, Mr. Mason billed 5.24 hours for a total fee of $1,593.  The billing entry for this date describes his work as follows:  "Numerous emails from client regarding . . . revisions to subpoena . . . finalize subpoena to . . . numerous emails from and to . . . regarding . . .; research regarding . . .; begin preparation of subpoena to . . .; several telephone calls from and to . . . ."  Kim again objected to this entry on the grounds of "Block Billing" and "Redaction."  R Consulting in its reply

merely repeated the same response it gave for the May 10 entry: "Privileged information."

The billing entries for May 12 and 15, 2017, are not unlike the heavily redacted May 10 and 11 entries. Kim's similarly objected to these entries and R Consulting's "response" was the same.[13]

Compounding the problem of whether R Consulting was entitled to fees based on the heavily redacted billing entries was counsel's practice of block billing. Block billing is not per se invalid. (See *Jaramillo v. County of Orange* (2011) 200 Cal.App.4th 811, 830.) However, a trial court retains wide discretion to penalize block billing when it prevents the court from discerning which tasks are compensable and which are not. (*Ibid.*) Here, because of the substantial redactions made in entries that were block billed by date, it is not possible in many of the entries to discern what work was done by counsel; to separate out the work that was satisfactorily described from the work that, because of the redactions, was not; and to compensate R Consulting under section 685.040 accordingly.

Moreover, we are unable to discern from the record why the redacted information was allegedly privileged. It would appear many of the redactions cannot be explained under the attorney-client privilege, as this privilege only protects disclosure of communications between an attorney and his or her

---

[13] By way of further example, R Consulting also made substantial redactions to the following May 2017 entries: 17, 18, 19, 22, 23, 25, 30, and 31. The following entries for dates in June 2017 were also heavily redacted by R Consulting: 1, 2, 5, 6, 7, 8, 9, 12, 13, 14, 15, 16, 19, 20, 26, 27, 28, and 29. A prime example of the redactions from June 2017 is found in the following entry for June 8: "Lengthy phone conversation with . . .; research . . .; research . . . phone conversations . . . ." On this date, Mr. Mason billed 5.54 hours generating $1,740.50 in fees. We note billing entries for many months other than May and June 2017 were similarly redacted, including based on R Consulting's claim of privilege.

client, not the disclosure of the "underlying facts upon which the communications are based." (*Benge v. Superior Court* (1982) 131 Cal.App.3d 336, 349.)  In addition, this privilege "does not extend to independent witnesses" or their discovery.  (*Triple A Machine Shop, Inc. v. State of California* (1989) 213 Cal.App.3d 131, 143 (*Triple A Machine*).)

To the extent the redactions were based on the attorney work-product doctrine, R Consulting was required to make a "preliminary or foundational showing" that the unredacted billing entries would reveal its attorney's "tactics, impressions, or evaluation of the case, or would result in opposing counsel taking undue advantage of the attorney's industry or efforts."  (See *Coito v. Superior Court* (2012) 54 Cal.4th 480, 502 (*Coito*).)  "Upon such a showing, the trial court should then determine, by making an in camera inspection if necessary, whether absolute or qualified work product protection applies to the material in dispute."  (*Ibid.*)

Here, R Consulting did not make a "preliminary or foundational showing" that, absent the substantial redactions, the billing entries would reveal counsel's "tactics, impressions, or evaluation of the case" (see *Coito*, *supra*, 54 Cal.4th at p. 502), or would result in Kim's counsel "free riding" on the work of its counsel.  (See *ibid.*)  Nor does the record show that R Consulting made available unredacted invoices for the trial court to review in camera to determine what work was actually done and whether the redacted information was in fact confidential.  (See *ibid.*)

In addition, from our review of the invoices it appears certain redactions on the basis of privilege were unfounded.  By way of example only, the June 5, 2017 billing entry provided:  "*Correspondence from and to opposing counsel regarding* . . .; phone calls and correspondence with . . .; continue with preparation of . . . .  (Italics added.)  For this entry, Mr. Mason

23

billed 3:48 hours, generating a fee of $1,121. However, "correspondence from and to opposing counsel" on a particular subject matter does not appear to involve confidential information requiring redaction.[14] (See *Coito*, *supra*, 54 Cal.4th at p. 502.)

We recognize the tension between protecting privileged information and preventing the dissemination of such information. However, that tension does not override a court's duty to review—including in camera—attorney billing records to ensure there is a reasonable basis for a fee award. (See *Powell*, *supra*, 26 Cal.App.5th at pp. 236–237.)

We note there also were myriad invoices objected to by Kim on the basis of block billing and excessive redactions to which R Consulting provided no explanation whatsoever. By way of example only, for May 2017 these included billing invoices for the following dates: 1, 2, 3, 4, 5, 8, 16, and 18. Again, because of block billing, it is not possible on review to determine how much time was spent on certain tasks that were unredacted, and may have been compensable, from tasks that were redacted, and may not have been compensable.

---

[14]    By way of further example, R Consulting in several billing entries redacted the names of third-party witnesses it was subpoenaing. It is not clear why the names of such individuals would be confidential, particularly if the subpoena issued. (See *Triple A Machine*, *supra*, 213 Cal.App.3d at p. 143 [attorney-client privilege does not extend to third-party witnesses]; *Coito*, *supra*, 54 Cal.4th at p. 502 [work-product doctrine only applies to information that reveals an attorney's "tactics, impressions, or evaluation of the case"].)

Finally, we note there were some billing entries that were *completely* redacted but the amount billed on a particular day ostensibly was included in the fee award.[15]  These included invoices from October 5, 2017 (1.30 hours billed by Mr. Mason for a total fee of $442.50); April 25, 2018 (.30 hours billed by Mr. Mason for a total of $88.50); and December 11, 2018 (3.30 hours billed by Mr. Mason for a total of $1,032.50).  In each of these three invoices, R Consulting failed to explain the reason or reasons for its complete redaction of the billing entries, but was nonetheless compensated for this time in the fee award.

Based on the foregoing, we conclude R Consulting failed to satisfy its burden to show it was entitled to fees for the block billed entries that were so heavily or completely redacted it was not possible to determine the work done by counsel and thus, whether such work was compensable under section 685.040.

In light of our decision, we deem it unnecessary to address, and offer no opinion on, Kim's other objections to the fee award, including, as we have noted, to R Consulting's entitlement to fees from the appeal in *R Consulting I*.[16]  In sum, the attorney fees award in favor of R Consulting is reversed and the matter remanded for the trial court to reconsider that award in light of this opinion.

---

[15]    We note there were several entries that were also completely redacted in which R Consulting claimed it did not seek reimbursement for its counsel's work.  Our discussion does not include these particular entries, which were identified by the total fee for a particular date also being redacted.

[16]    See footnote 11, *ante*.

III

Turnover Order

As noted, Kim contends for the first time on appeal that the turnover order is invalid because it allegedly circumvented the exclusive statutory mechanism for garnishment of an employee's wages under state law. We deem this issue forfeited.

A. *Forfeiture*[17]

It is axiomatic that a court of review ordinarily will not consider claims made for the first time on appeal that could have been made in the trial court, deeming such claims forfeited. (See *Nellie Gail Ranch Owners Assn. v. McMullin* (2016) 4 Cal.App.5th 982, 997 (*Nellie Gail*) [noting as a " 'general rule, theories not raised in the trial court cannot be asserted for the first time on appeal' "]; *JRS Products, Inc. v. Matsushita Elec. Corp. of America* (2004) 115 Cal.App.4th 168, 178 (*JRS Products*) [recognizing that courts of review "are loath to reverse a judgment [or order] on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider"].) Although there are exceptions to this general rule, it prevails when the new claim involves a mixed question of law and fact (*Panopulos v. Maderis* (1956) 47 Cal.2d 337, 341 (*Panopulos*)), such as when a claim involves both statutory interpretation and applying the facts to the statute as construed.

Kim contends the wage garnishment law is the exclusive means by which a judgment creditor may levy a judgment debtor's wages, and this law

---

17    On this court's own February 11, 2021 motion, we sought, received and have considered supplemental briefing from the parties regarding whether Kim forfeited his claim that the turnover order contravened the wage garnishment law, based on his (1) failure to raise that claim in the trial court; (2) his consent to the terms of the turnover order; and/or (3) his conduct in attempting to abide by it.

was not followed by the court when it issued the turnover order, in deprivation of his due process rights. To support this contention, Kim on appeal relies on various sections of this law. Importantly, Kim's contention requires us to accept that he was in an employer/employee relationship with Emajee, Outsourced Solutions, and/or IT Source Korea. (See § 706.011, subd. (b) [providing the wage garnishment law applies to "earnings," meaning "compensation payable by an *employer to an employee* for personal services performed by such employee, whether denominated as wages, salary, commission, or otherwise" (italics added)].)

But as summarized *ante*, R Consulting proffered evidence showing the Companies were a sham, raising a predominately factual question regarding the nature of the relationship, or lack thereof, between the Companies and Kim, including whether he controlled the Companies and/or was an "employee" of any of the Companies as defined under the wage garnishment law. (See § 706.011, subd. (e) [defining an "employee" to mean "a public officer and any individual who performs services subject to the right of the employer to control both what shall be done and how it shall be done"].) Indeed, the court specifically found when it issued the turnover order that the "typical garnishment procedure compelling 'employers' to deliver to the levying officer the required amounts under a garnishment order is not workable in this case given the evidence presented regarding the companies."

We conclude Kim's contention the turnover order allegedly violates the wage garnishment law involves a mixed question of law and fact, with the factual issues predominating. (See *Panopulos*, *supra*, 47 Cal.2d at p. 341.) As such, we further conclude Kim has forfeited this claim of error on appeal, as this claim should have been raised in the trial court, and not for the first time on appeal. (See *Nellie Gail*, *supra*, 4 Cal.App.5th at p. 997 [" 'theories

27

not raised in the trial court cannot be asserted for the first time on appeal' "]; *JRS Products*, *supra*, 115 Cal.App.4th at p. 178 [courts of review are reluctant to reverse an order or judgment on grounds not briefed by the parties in, or considered by, the trial court].)

B. *Consent/Estoppel/Waiver*

As is clear from the record, Kim did not oppose R Consulting's motion for the turnover of copies of his pay checks and pay stubs on an ongoing basis and for the assignment of 25 percent of his "disposable wages" from the Companies. To the contrary, as summarized *ante* Kim filed a notice of non-opposition to that motion and the parties, as stated in the turnover order itself, represented to the court at the October 20, 2017 hearing that they had reached an agreement to its terms.

Kim also was clear in opposing R Consulting's January 11, 2018 ex parte request for a turnover order, after there was some disagreement between the parties over the terms of the stipulation, that he "volunteered to provide those amounts of his income which R Consulting would otherwise have had to obtain through the garnishment process." He added, "though garnishment would not have reached his salary paid in Korea by a Korean company [i.e., IT Source Korea], he voluntarily agreed to provide the equivalent amount of garnishment."

Moreover, although the parties disagree on whether Kim has fully complied with the terms of the turnover order, the record clearly shows that after its issuance he acted as if he was bound by that order. Indeed, it is undisputed that he paid some money toward the judgment and provided some pay records, and, when he believed he could no longer comply with the turnover order, including paying R Consulting 25 percent of his "disposable earnings," he sought "emergency relief" from that order more than a year

28

after it had issued.  The record thus shows that Kim voluntarily agreed to the terms of the turnover order and, up until this appeal, at all times acted as if it was valid and binding on him.

Therefore, we separately conclude under the unique circumstances of this case that Kim is barred or estopped from disputing, or has "waived" the right to dispute,[18] the validity of the turnover order both by (1) his initial consent to be bound to its terms and (2) his conduct once the order issued. (See *Metalclad Corp. v. Ventana Environmental Organizational Partnership* (2003) 109 Cal.App.4th 1705, 1713 (*Metalclad*) [recognizing the rule that an " 'estoppel precludes a party from asserting rights "he otherwise would have had against another" when his own conduct renders assertion of those rights contrary to equity' "].)

For these same reasons, we reject Kim's contentions that the court allegedly violated his due process rights when it issued the turnover order (see *D.H. Overmyer Co. v. Frick Co.* (1972) 405 U.S. 174, 185–186 [recognizing that constitutional rights may generally be waived, provided the waiver is knowing, voluntary, and intelligent]); that R Consulting was required to either "domesticate the American judgment in Korea or serve the actual Korean entity [i.e., IT Source Korea] to allow the Korean tax process to occur pre-garnishment"; and that the court in the instant case allegedly had "allowed a California judgment creditor to ensnare Korean-earned money before Korea can even get its proper, lawful share of its tax on the Korean wages."  As noted *ante*, Kim *voluntarily* agreed to be bound by the turnover

---

18    R Consulting in its respondent's brief argued Kim "waived" his right to contest the validity of the turnover by stipulating to its terms, citing *Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 31 [noting a "waiver may be either express, based on the words of the waiving party, or implied, based on conduct indicating an intent to relinquish the right"].

order *and* to include within its terms the amount equivalent to earnings from IT Source Korea if a garnishment order had issued. (See *Metalclad*, *supra*, 109 Cal.App.4th at p. 1713.)

C. *Denial of Request to Modify the Turnover Order*

Finally, we conclude the trial court did not abuse its discretion in denying Kim's request to modify the turnover order. In reviewing the August 28 order, we presume it is correct, indulge all intendments and presumptions to support it on matters as to which the record is silent, and require Kim to affirmatively show error. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609 (*Jameson*); *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)

Kim contends the court abused its discretion in denying his request to modify the turnover order because there allegedly was undisputed evidence his earnings from Emajee and Outsourced Solutions had dramatically decreased since its issuance. We note, however, that the court was not required to accept as true Kim's statements in his declaration that his earnings from these two companies were negligible. (See *Lohman v. Lohman* (1946) 29 Cal.2d 144, 149 (*Lohman*) [noting the court "is not required to accept as true the sworn testimony of a witness, even in the absence of evidence directly contradicting it, and this rule applies to an affidavit"], cited with approval in *R Consulting I,* at p. 11.)

Here, the trial judge who issued the turnover order in January 2018 was also the judge who denied Kim's request to modify that order about 18 months later. In connection with the turnover order, the judge was aware that Info Tech and Kim were subject to a substantial judgment; that the judgment had resulted from a terminating sanction based on the court's finding that Info Tech and Kim had intentionally destroyed potential evidence in contravention of R Consulting's right to discovery and the trial

30

court's previous orders; that Kim had been accused of "deliberately and repeatedly" failing to comply with the turnover order, including paying R Consulting 25 percent of his disposable earnings and providing copies of pay records from the Companies; that the court at the September 12, 2018 hearing ordered Kim to comply with the turnover order and appear at his continued debtor's exam; that R Consulting proffered evidence showing Kim in September 2018 withdrew $10,000 from his *personal* bank account, which account R Consulting claimed he did not disclose during his debtor's exam, and spent that money gambling in Las Vegas; that Kim claimed the $10,000 was repayment of a personal debt and he treated the receipt of the money as a "windfall"; that Kim during this same trip to Las Vegas applied for and received additional credit from a casino; and that Kim in February 2019 deposited more than $8,000 into the same bank account he did not identify at the debtor's exam, but claimed that money was subject to an order in another state, which order he could not provide to R Consulting or its counsel.

But that's not all. As summarized *ante*, Kim claimed he was the vice-president of Emajee, but did not know the name of the company president. Kim also claimed he did not know who paid the $14,000 monthly rental where he sometimes resided with his mother, even though R Consulting produced records showing Kim had signed a check in that amount; and that Kim also claimed he did not know the name of the other officer of IT Source Korea, whom Kim occasionally visited when in South Korea.

The record also shows R Consulting expended substantial effort to enforce the judgment. This included attempting to locate Kim's assets, including assets that may have been held by third parties.

Although the trial judge did not explain the reason(s) for his denial of Kim's request to modify, given the presumption of correctness—including as

a result of the unreported August 23 hearing on that request (see *Jameson*, *supra*, 5 Cal.5th at pp. 608–609)—and the circumstances and evidence in this case, it is clear the court weighed the credibility of the parties and found Kim less than credible.  (See *Lohman*, *supra*, 29 Cal.2d at p. 149.)

As we explained in *R Consulting I*, " 'As an appellate court, we do not review the evidence for its "believability," [and q]uestions of credibility are for the trial court.' [Citation.]  'When two or more inferences can reasonably be deduced from the facts, we do not substitute our deductions for those of the finder of fact.  [Citation.]  We must affirm if substantial evidence supports the trier of fact's determination, even if other substantial evidence would have supported a different result.' [Citation.]  This rule applies if the trial court makes a credibility determination based on *declarations* as well as oral testimony.  (See *United Health Centers of San Joaquin Valley, Inc. v. Superior Court* (2014) 229 Cal.App.4th 63, 74; *Fininen v. Barlow* (2006) 142 Cal.App.4th 185, 189–190.)"  (*R Consulting I*, at p. 11, italics added.)

We reach the same conclusion for the same reasons with respect to Kim's claim the court erred by refusing to modify the turnover order because South Korean law allegedly prevented his compliance with that order.  Indeed, as R Consulting noted in opposing Kim's modification request, Kim initially raised the South Korea "tax" issue at or near the time when the turnover order first issued, and thus, it was neither new nor ostensibly viewed by the trial court as being credible.

DISPOSITION

The portion of the August 28, 2019 order granting R Consulting attorney fees of $387,464.50 is reversed and the matter remanded for the trial court to reconsider that award in light of this opinion. The remaining portion of the August 28 order denying Kim's request to modify the turnover order is affirmed. In the interests of justice, the parties are to bear their own costs on appeal. (Rule 8.278(a)(5).)

BENKE, J.

WE CONCUR:


McCONNELL, P. J.


GUERRERO, J.

33