DATO, J.
*285 Defendant Anice Plikaytis appeals from an order awarding her attorneys' fees in a breach of contract action brought by plaintiff Debra Roth. In the published portion of the opinion, we agree with Plikaytis's contention that the trial court erred when it declined to consider previously filed documents she incorporated by reference as part of her motion. In the remaining unpublished portions of the opinion, we discuss Plikaytis's arguments that (1) the court failed to apply the lodestar method, (2) erroneously denied fees for equitable and cross-claims and for obtaining relief from bankruptcy stays, and (3) substantially reduced her award without explanation. We conclude the court erred by denying fees for obtaining bankruptcy stay relief that related to the breach claim and failing to provide an adequate justification for significantly reducing the number of hours allowed. We are *286 unpersuaded by Plikaytis's remaining contentions. Accordingly, we affirm in part, reverse in part, and remand with directions.
FACTUAL AND PROCEDURAL BACKGROUND
Underlying Events and Breach of Contract Trial
This case arose out of financial dealings between Debra Roth, her husband James Roth, Plikaytis, and Talmadge East, LLC (Talmadge).[1] As is relevant here, Debra loaned $250,000 to Talmadge, and James and Plikaytis signed promissory notes (the Note) personally guaranteeing this amount. The Note contained an attorneys' fee provision: "If any action is necessary to enforce payment of this Note, Borrower promises to pay all costs incurred in the action or proceeding, including attorney[s'] fees."
In January 2010 Debra sued Talmadge, James, and Plikaytis for failure to repay the Note and regarding other loans not at issue here. She alleged breach of contract (with one count relating to the Note), unjust enrichment and declaratory relief (based on the same facts as the breach claim), and money due on open book account and account stated (against Talmadge, and relating to one of the other loans). In May 2010 James filed for bankruptcy *853 and proceedings were stayed as to him.
Plikaytis filed a cross-complaint and amended it twice, following demurrers and motions to strike. In March 2011 she filed the operative second amended cross-complaint against Debra, James, two Roth entities, and Talmadge. She sought dissolution and an accounting of Talmadge, two counts of declaratory relief (including one against Debra, alleging a right of offset as to the Note and seeking to enjoin Debra from collecting on it), and indemnity from Talmadge and James.
Plikaytis obtained new counsel twice during these proceedings. In December 2010 Stephen Cummings became her attorney. In November 2011 Scott A. McMillan and The McMillan Law Firm, APC (McMillan) substituted in as her counsel and they remain her counsel of record.
The legal claims were bifurcated from the equitable claims, and a default was entered against Talmadge. In May 2012 the case proceeded to an eight-day jury trial on the breach of contract claim against Plikaytis. The jury returned a verdict in Plikaytis's favor.
*287 Proceedings Following the Breach of Contract Trial
Plikaytis moved for relief from the stay in James's bankruptcy case, to pursue dissolution of Talmadge. In March 2013 the bankruptcy court granted relief so James could dissolve Talmadge (or, if he failed to do so, so Plikaytis could seek relief to obtain judicial dissolution). The court denied relief as to the remainder of the cross-complaint. Plikaytis also filed an adversary complaint in bankruptcy court against Debra; it did not mention the Note.[2]
In May 2013 Debra filed for bankruptcy, proceedings again were stayed, and Plikaytis again sought relief from the stay. In December 2013 the bankruptcy court granted relief to "conclude all proceedings having to do with the Complaint" in this action, including "whatever motions are necessary to ... reduce the State Court case to judgment, including liquidating any claims for fees and for costs." The order stated the stay "shall remain in effect with respect to enforcement and collection of any judgment against the Debtor or estate property." The court also declined to allow Plikaytis to pursue her cross-complaint "against the Debtor or the Estate." Plikaytis filed another adversary complaint against Debra for nondischargeability, but it does not appear to be in the record.
In May 2014 Plikaytis filed a motion for attorneys' fees. Debra opposed the motion as premature because the equitable issues remained unresolved. The trial court agreed and denied it without prejudice. Plikaytis sought clarification as to stay relief in both bankruptcies. In February 2015 the bankruptcy court issued an order indicating, among other things, that no relief had been provided for Plikaytis to pursue her declaratory relief claim against Debra, relief was unnecessary for certain claims, and the cross-complaint could proceed as to Talmadge (and one of the Roth entities). With respect to Debra's complaint, the court stated: "Until [the question of] whether [Debra's] claims against [Plikaytis] were her separate or community property is determined in this Court, the automatic stay in [James's] case protects *854 against further proceedings on the Complaint other than for judgment to be entered on the Complaint. To enter judgment on the Complaint, this Court grants further stay relief only to the extent necessary for attorney's fees and other aspects of the judgment amount to be liquidated."
The equitable trial (encompassing the dissolution and accounting of Talmadge), took place later that year. The court entered judgment in October 2015.
*288 Motion for Attorneys' Fees
In February 2016 Plikaytis again moved for attorneys' fees, seeking a total of $442,622.78. She requested $386,006 for McMillan's services, $29,402.50 for Cummings' work, and $8,000 for anticipated fees on the fee motion, as well as a multiplier based on the "nature of the case, the risk incurred, and the high caliber of service." The motion contained a table of hourly rates and hours expended, and stated it was based on the "Declaration of Scott A. McMillan in Support of Defendant Plikaytis' Motion for Attorneys' Fees [previously filed in court on May 6, 2014]" and "the Declaration of Stephen T. Cummings, Esq. in Support of Motion for Attorneys' Fees dated January 29, 2013 [previously filed in court on May 6, 2014]," among other documents. Plikaytis also filed a supplemental declaration from Scott A. McMillan, which attached billing records for the McMillan firm reflecting 1,307.56 hours of work, and a supplemental memorandum of points and authorities. Finally, Plikaytis filed a proof of service indicating that courtesy copies of certain documents were served on the trial court, including the original Scott A. McMillan declaration and Cummings declaration.[3]
Debra opposed the fee motion on various grounds. She criticized Plikaytis's purportedly untimely filing and reliance on previously filed documents. She also challenged Plikaytis's claims for (1) work "for other litigation," including work performed in bankruptcy court; and (2) "unnecessary," "block bill[ed]," "vague," "unrelated," and "unreasonable" work, including communications with prior counsel, excessive time on discovery and trial exhibits, and unrelated posttrial work. She requested the court deny fees entirely or "significantly reduce" the fees awarded. On reply, Plikaytis maintained that incorporation by reference was sufficient, citing California Rules of Court, rule 3.1110(d).[4]
In April 2016 the trial court issued its award. First addressing counsel's requested hourly rates, the court stated they were "supported by Mr. McMillan's declaration filed in support of Defendant's prior motion," but "[n]o support for these rates was provided in this current motion." The court explained that "[w]ith respect to Plikaytis'[s] 'incorporation by reference' of documents previously filed, while [rule] 3.110(d) [sic ] states that '[a]ny paper previously filed must be referred to by date of execution and title,' the Court has never seen an attorneys' fees motion that simply refers to papers, including declarations, previously filed, as the support for the motion." It also noted the *289 prior motion was denied without prejudice, not continued, and that the case file was 15 volumes. The court concluded: "Since there is nothing before the Court to support the requested hourly rates, the Court has the discretion to *855 award a reasonable hourly rate," and set rates of $375 for Scott A. McMillan, $250 for Evan Kalooky, $175 for Michael Healy, and $50 for support staff. The court set no rate for Cummings.
Turning to the amount of time expended, the court's explanation is central to our analysis and we set it forth in full:
"Looking at Plikaytis'[s] billing records the fees requested appear inflated and will be reduced significantly. Fees related to efforts in the bankruptcy court will be excluded from the fees awarded by way of this motion. However, it is difficult to determine which fees these are. Plikaytis submits a large stack of billing reports. While Plaintiff opposes some of the billings, the highlighted stack of reports she attaches ... are apparently from the 2014 motion, and not the new motion, so it [is] unclear how they correlate. [¶] The number of hours claimed by McMillan Law Group is supported by McMillan's declaration filed in support of this motion, so the Court does at least have competent evidence before it in that regard. The total number of hours claimed by McMillan's firm is 1,307.56. The Court has broad discretion in fixing a reasonable fee. The Court will be reducing the number of hours by approximately half (so approximately 650 hours) to account for any bankruptcy work, claims other than the breach of contract claim, what appear to be duplicative efforts of attorneys in the firm, and other excessive entries."
The court concluded that "[w]ith this formula, Plikaytis would receive the following: [Scott A.] McMillan: $76,500 [¶] Kalooky: $12,000 [¶] Healy: $43,750 [¶] Support Staff: $7,500," for a total of $139,750." It determined that Plikaytis did not meet her burden for an unspecified multiplier, explaining the case "was not particularly novel or complex, and did not require extraordinary legal skill." With respect to Cummings, the court found no evidence was submitted to support his fees (noting his declaration was "not now before the court"), and denied them. It awarded a total of $15,261.17 in costs.[5]
DISCUSSION
Plikaytis sought fees under Civil Code section 1717,[6] which provides that "[i]n any action on a contract, where the contract specifically provides that *290 attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs." If there is an issue as to whether section 1717 applies, this is a legal question that we review de novo. ( Plotnik v. Meihaus (2012) 208 Cal.App.4th 1590, 1615, 146 Cal.Rptr.3d 585 ( Plotnik ).)
We recognize that "the ability of lawyers to perform their important professional *856 function in society is in the long run dependent on assurances they will be fairly compensated for their work." ( Cazares v. Saenz (1989) 208 Cal.App.3d 279, 291, 256 Cal.Rptr. 209.) As a result, California law requires that attorney fee awards be "fully compensatory." ( Ketchum v. Moses (2001) 24 Cal.4th 1122, 1133, 104 Cal.Rptr.2d 377, 17 P.3d 735.) In general, parties who qualify for a fee should recover compensation for "all the hours reasonably spent , including those relating solely to the fee." ( Ibid . )
"[T]he fee setting inquiry in California ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate." ( PLCM Group, Inc. v. Drexler (2000) 22 Cal.4th 1084, 1095, 95 Cal.Rptr.2d 198, 997 P.2d 511 ( PLCM Group ).) "The lodestar figure may then be adjusted, based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal services provided. [Citation.] Such an approach anchors the trial court's analysis to an objective determination of the value of the attorney's services, ensuring that the amount awarded is not arbitrary." ( Ibid . )
As the party seeking fees, Plikaytis " 'bear[s] the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.' " ( ComputerXpress, Inc. v. Jackson (2001) 93 Cal.App.4th 993, 1020, 113 Cal.Rptr.2d 625.) It is also her "burden on appeal to prove that the court abused its discretion in awarding fees." ( Gorman v. Tassajara Development Corp. (2009) 178 Cal.App.4th 44, 98, 100 Cal.Rptr.3d 152 ( Gorman ).)
"We review an order granting or denying fees for an abuse of discretion. [Citation.] 'Because the "experienced trial judge is the best judge of the value of professional services rendered in his court," we will not disturb the trial court's decision unless convinced that it is clearly wrong, meaning that it is an abuse of discretion.' " ( Graciano v. Robinson Ford Sales, Inc. (2006) 144 Cal.App.4th 140, 148, 50 Cal.Rptr.3d 273 ( Graciano ).) "The abuse of discretion standard is 'deferential,' but it 'is not empty.' [Citation.] ' "[I]t asks in substance whether the ruling in question 'falls outside the bounds of reason' under the applicable law and the relevant facts." ' " ( People v. Giordano (2007) 42 Cal.4th 644, 663, 68 Cal.Rptr.3d 51, 170 P.3d 623.)
*291 A. The trial court erred in declining to consider the previously filed supporting documents incorporated by reference.
Plikaytis contends the trial improperly failed to consider both her billing records and additional documents she filed in support of her first fee motion.
Plikaytis does not establish the trial court failed to consider the billing records (although, as we discuss post , it is not clear the court did so in more than a cursory manner). "[I]t is the trial court's role to examine the evidence, and we presume the court performed its duty." ( Christian Research Institute v. Alnor (2008) 165 Cal.App.4th 1315, 1324, 81 Cal.Rptr.3d 866 ( Christian Research ).) Here, the court expressly referenced "[l]ooking at Ms. Plikaytis'[s] billing records," and indicated that Scott A. McMillan's declaration provided "competent evidence" of the number of hours claimed by his firm. This is sufficient to conclude the court considered the records. To the extent Plikaytis is relying on the court's comments that the billing reports attached to Debra's opposition were "apparently from the 2014 motion" and it was "unclear how they correlate[d]," this does not suggest otherwise. The court appeared to be expressing confusion *857 with Debra's use of 2014 billing records, not declining to review those that Plikaytis submitted in 2016.
Turning to the previously filed documents, we agree the trial court erred in refusing to consider them.[7] Rule 3.1110 addresses the general format for motions. As noted ante , rule 3.1110(d) states that "[a]ny paper previously filed must be referred to by date of execution and title." Rule 3.1113 provides rules for the memorandum in support of the motion, and rule 3.1113(j) states that "[t]o the extent practicable, all supporting memorandums and declarations must be attached to the notice of motion." Consistent with these rules, a litigant may incorporate previously filed documents and, where practicable, should file them with the motion.[8] But a litigant is not required to do so absent a rule precluding incorporation by reference. (Cf. rule 3.1345(a) & (c) [requiring separate statement for certain discovery motions and stating "[m]aterial must not be incorporated into the separate statement by reference"].)
Plikaytis directs us to the summary judgment context, where courts have long held that documents incorporated by reference are before the court.
*292 (See Newport v. Los Angeles (1960) 184 Cal.App.2d 229, 234, 7 Cal.Rptr. 497 ["[W]e must not only look to the face of the affidavit but ... must also examine the documents in the file which it incorporates, for it has long been established in this state that an affidavit may incorporate by reference other papers on file in the same action"]; see also Larsen v. Johannes (1970) 7 Cal.App.3d 491, 496, 86 Cal.Rptr. 744 ["The notice of motion indicated reliance upon all the files in this action, and the pleadings incorporating the documentation. This was sufficient to bring them before the court"]; but see Truslow v. Woodruff (1967) 252 Cal.App.2d 158, 164-165, 60 Cal.Rptr. 304.) Code of Civil Procedure section 437c now expressly contemplates incorporation by reference in summary judgment papers. ( Code Civ. Proc. § 437c, subd. (b)(7).) We see no reason why incorporation by reference would be any less appropriate for a fee motion.
Here, Plikaytis incorporated by reference the original Scott A. McMillan and Cummings declarations, and other documents from the first fee motion, and provided courtesy copies of those declarations and certain other materials. This was enough to put them before the court. The court acknowledged rule 3.1110(d), but stated it had not seen this type of supporting material in a fee case, the prior motion had been denied, and the record was large. These reasons do not justify the court's refusal to consider the previously filed materials.
Refiling materials to support fee motions may be typical, and even prudent, but it is not required. Denied motions are part of the record. And even assuming record size imposes an additional burden, *858 to aid the court Plikaytis did provide courtesy copies. At a minimum, if the court felt Plikaytis's efforts were insufficient to rely on incorporation by reference, it could have permitted her to refile the documents. Simply refusing to review the materials was an abuse of discretion.
Because the trial court failed to consider the incorporated materials, which were submitted in support of Plikaytis's claim that the hourly rates charged by her attorneys were appropriate, we must remand the matter to the trial court so that it can review the evidence and determine, in the first instance, whether those rates were reasonable. For similar reasons, the court must reconsider the fee request attributable to attorney Cummings, which was summarily denied based on a lack of evidence even though the Cummings' declaration incorporated by reference appears to provide the necessary billing records.
B. The trial court erred in how it applied the lodestar method.**
*293 DISPOSITION
The order awarding attorneys' fees to Plikaytis is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. Plikaytis shall recover her costs on appeal.
WE CONCUR:
HUFFMAN, Acting P.J.
O'ROURKE, J.

As Debra and James Roth share the same last name, we refer to them by their first names in the interest of clarity. We intend no disrespect.

We rely on the documents in the record (i.e. the bankruptcy court dockets, court orders, and the adversary action in James's bankruptcy) for our summary of the bankruptcy matters. We note it does not appear the motions for stay relief or the adversary complaint in Debra's bankruptcy (discussed post ) are in the record, and the bankruptcy court dockets only go through early 2014.

Plikaytis states her counsel served copies of "all documents" cited in her second fee motion. The proof of service in the record, which she cites in her opening brief, includes only a subset of the documents.

Further rule references are to the California Rules of Court. Rule 3.1110(d) provides that "(a)ny paper previously filed must be referred to by date of execution and title."

Plikaytis states the trial court "made a summary reduction of the fees claimed by 2/3." If this is meant to imply the court simply awarded 1/3 of the requested amount, we do not view that characterization as accurate. While the ultimate award was somewhat less than 1/3 of the amount initially sought, this was due to a combination of rate and hour reductions. We note the hour reduction was slightly more than 50 percent; as far as we can tell, the court rounded down the halved hours in calculating the lodestar. For purposes of simplicity, we will refer to that reduction as "50 percent."

Further statutory references are to the Civil Code unless noted.

Plikaytis contends this issue implicates the meaning of rule 3.1110(d), and de novo review applies; Debra maintains we review for abuse of discretion. We agree with Debra. The trial court acknowledged the rule, but elected not to consider the incorporated materials; the question is whether doing so was within its discretion.

See Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2017) ¶ 9:23.1-1a, discussing rule 3.1110(d), and recommending courtesy copies for large cases: "Where the court file becomes thick and unwieldy or mushrooms into several file folders, include a copy of the previously filed document as an exhibit to your current filing.... This will save the judge the undue amount of time required to locate the earlier filed document in the court file." (Italics omitted.)

See footnote *, ante.