Filed 8/26/22  Sun West Mortgage v. First Alliance Home Mortgage CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| SUN WEST MORTGAGE COMPANY, INC., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> FIRST ALLIANCE HOME MORTGAGE, LLC, <br><br> Defendant and Appellant. | B303510, B304901 <br><br> (Los Angeles County Super. Ct. No. BC659293) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Dennis J. Landin, Judge.  Affirmed.

Law Offices of Russell J. Thomulka and Russell J. Thomulka for Defendant and Appellant.

Early Sullivan Wright Gizer & McRae, Scott E. Gizer and Diane M. Luczon for Plaintiff and Respondent.

———————————

Defendant and appellant First Alliance Home Mortgage, LLC (First Alliance) issued a loan to a borrower to refinance an investment property. First Alliance later sold this loan to plaintiff and respondent Sun West Mortgage Company, Inc. (Sun West), which in turn sold the loan to Fannie Mae. Fannie Mae demanded that Sun West repurchase the loan because the borrower lacked sufficient cash reserves to satisfy Fannie Mae's guidelines. Pursuant to an agreement that governed Sun West's initial purchase of the loan from First Alliance, Sun West demanded that First Alliance repurchase the loan from Sun West. First Alliance did not repurchase the loan.

Sun West filed suit against First Alliance for breach of contract and indemnity. After a one-day bench trial, the trial court found in favor of Sun West on both causes of action and ordered (a) First Alliance to pay Sun West the amount Sun West had paid to Fannie Mae to repurchase the loan ($73,077.13); and (b) Sun West to transfer the loan back to First Alliance. The trial court awarded Sun West prejudgment interest at the rate of 10 percent, which accrued from the date Sun West repurchased the loan from Fannie Mae to the date First Alliance repurchased the loan from Sun West, along with $160,000 in attorney fees and $14,660.90 in expert fees and other costs.

On appeal, First Alliance principally argues that the trial court erred in: (1) ordering specific performance of the parties' agreement by requiring First Alliance to repurchase the loan instead of awarding ordinary contract damages to Sun West; (2) awarding excessive attorney fees and costs, given that Sun West's actual damages were (according to First Alliance) only $5,236.27; (3) selecting a prejudgment interest rate of

2

10 percent instead of the 4.5 percent rate applicable to the underlying loan; and (4) applying that 10 percent interest rate to the repurchase price rather than what First Alliance contends are Sun West's actual damages. We conclude First Alliance fails to establish that the trial court abused its discretion in granting specific performance and in awarding attorney fees and costs; the 4.5 percent interest rate does not govern the prejudgment interest calculation because the 4.5 percent rate is owed by the borrower of the loan and not First Alliance; and the court did not err in applying the 10 percent rate to the repurchase price because the grant of specific performance was proper. Finding no error, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

We summarize only those facts that are pertinent to our disposition of this appeal.

_____

[1] Our factual and procedural background is derived in part from undisputed aspects of the trial court's rulings, admissions made by the parties in their filings, and assertions Sun West raises in its respondent's brief to which First Alliance does not respond in its reply. (See *Baxter v. State Teachers' Retirement System* (2017) 18 Cal.App.5th 340, 349, fn. 2 [utilizing the summary of facts provided in the trial court's ruling]; Standards of Review, *post* [noting that the trial court's orders and judgments are presumed correct]; *Artal v. Allen* (2003) 111 Cal.App.4th 273, 275, fn. 2 [" '[B]riefs and argument . . . are reliable indications of a party's position on the facts as well as the law, and a reviewing court may make use of statements therein as admissions against the party.' "]; *Rudick v. State Bd. of Optometry* (2019) 41 Cal.App.5th 77, 89–90 [concluding that the appellants made an implicit concession by "failing to respond in their reply brief to the [respondent's] argument on th[at] point"].)

1.  *The broker agreement*

On August 28, 2012, Sun West and First Alliance entered into the mortgage broker and correspondent agreement (broker agreement). The broker agreement states that First Alliance is "in the business of originating, brokering, soliciting, and/or selling Mortgage Loans," and that First Alliance "desires to sell" and Sun West "desires to purchase Mortgage Loans, in accordance with the terms of this Agreement." This agreement governs the parties' business transactions that occurred in 2013, and the document provides that "it shall be interpreted and construed in accordance with, and shall be governed by, the laws of the State of California."

In section 3 of the agreement, First Alliance makes several representations and warranties "[a]s to each Loan Application or Mortgage Loan submitted to" Sun West. For instance, paragraph 3(b)(i) provides: "The Loan Application or Mortgage Loan strictly complies with, and has been originated, processed, closed, and Funded in accordance with the Guides,[2] Applicable Law, the guidelines of the Insuring Agency, [Sun West's] instructions, and FHA, HUD, VA, USDA-RD, Freddie Mac,

---

[2] The broker agreement defines "Guides" to "mean and include the [Sun West] Forward Mortgage Seller Guide ('Forward Guide'), [Sun West] Reverse Mortgage Seller and Underwriting Guide ('Reverse Guide'), [Sun West] Product Manual, lender alerts, and all other materials, including without limitation, product profiles, underwriting standards, loan commitments, closing instructions, other communications, overlays, announcements or guidelines published by [Sun West] on its website or provided to [First Alliance] from time to time, as amended and supplemented, that are in effect at loan Funding."

Fannie Mae, or Investor[3] guidelines." Further, paragraph 3(b)(vi) provides: "All representations made by [First Alliance] to [Sun West] concerning the Mortgage Loan and all information contained in the Loan Application and in any document provided to [Sun West] have been verified by [First Alliance] as true and correct in all respects."

Section 5 identifies certain occurrences that constitute "Events of Default" under the broker agreement. (Boldface omitted.) For example, paragraph 5(a) states: "<u>Uncured Breach.</u> [First Alliance] has breached any representation, warranty, covenant, or other obligation contained in this Agreement and [First Alliance] has failed to cure such breach to the satisfaction of [Sun West] within ten (10) days of [Sun West's] notice thereof." Another example is paragraph 5(e), which provides: "<u>Loan Ineligible For Purchase.</u> In the reasonable judgment of [Sun West], the Mortgage Loan is not eligible for Ginnie Mae, Fannie Mae, or Freddie Mac pool participation or whole loan purchase or purchase by an Investor." Additionally, paragraph 5(f) states that the following is included in the definition of "Events of Default": "<u>Investor Demand.</u> For reasons other than the action of [Sun West], an Investor requires [Sun West] to repurchase a Mortgage Loan, indemnify the Investor, or reimburse the Investor for pricing premiums, fees, or other losses."

Paragraph 6(a) of the agreement enumerates certain remedies that Sun West "may elect" to recover "[u]pon the

---

[3] The broker agreement defines the term "Investor" as "any person or entity that has purchased a Mortgage Loan from [Sun West] and/or has issued a guaranty or policy of mortgage insurance and includes, without limitation, Ginnie Mae, Fannie Mae, Freddie Mac or an [*sic*] private investor."

5

occurrence of an Event of Default . . . ." Of particular relevance here is paragraph 6(a)(ii), which states: "Repurchase. [First Alliance] agrees to repurchase the Mortgage Loan (or the mortgaged property, if title thereto is held by [Sun West]) at the 'Repurchase Price' (defined in the Guides), plus $2,000 as reimbursement for [Sun West's] administrative expenses. All repurchases shall be completed within twenty (20) days following receipt of written notice from [Sun West] to repurchase." Further, paragraph 6(a)(iii) provides in pertinent part: "Indemnification. [First Alliance] agrees to indemnify and defend and hold [Sun West] . . . harmless from and against, and shall reimburse [Sun West] with respect to, any and all losses, damages, demands, claims, liabilities, costs and expenses, including reasonable attorneys' fees, whether or not a lawsuit is filed (collectively, 'Losses'), of any nature or cause whatsoever, incurred by reason of or arising out of or in connection with: . . . an Event of Default . . . ."

The broker agreement also contains the following fee-shifting provision: "Attorneys' Fees and Costs. In the event of any controversy, claim or action between the parties, arising from or related to this agreement, the prevailing party will be entitled to receive from the other party its reasonable attorneys' fees and costs."

2.      ***The loan transaction, Fannie Mae's repurchase demand, and Sun West's attempt to have First Alliance repurchase the loan***

On March 15, 2013, First Alliance issued the subject loan to a borrower in the amount of $77,000 to allow him to refinance an investment property located in Pennsylvania. Pursuant to the terms of the broker agreement, Sun West later purchased the

6

loan from First Alliance.  Sun West subsequently sold the loan to Fannie Mae.

In a letter dated November 18, 2013, Fannie Mae demanded that Sun West repurchase the loan because Fannie Mae claimed the borrower did not have sufficient cash reserves to meet Fannie Mae's guidelines.  On May 8, 2014, Sun West repurchased the loan from Fannie Mae for $73,077.13.[4]

In a letter dated September 7, 2016, Sun West demanded that First Alliance repurchase the loan pursuant to paragraph 6(a)(ii) of the broker agreement within twenty days of the date of the letter.  First Alliance failed to respond to this letter, and later claimed that it did not receive this correspondence because First Alliance had relocated and Sun West sent the letter to First Alliance's prior address.

## 3.  *The trial court proceedings*

On April 28, 2017, Sun West filed a complaint against First Alliance, alleging two causes of action:  (1) breach of

---

[4] Although Sun West presented stipulated testimony from its chief operations officer that Sun West repurchased the loan from Fannie Mae on May 8, 2014 for $76,067.45, the parties seemed to have agreed in their posttrial briefing that Sun West actually paid $73,077.13 to Fannie Mae to repurchase the loan.

In addition, we note that First Alliance does not dispute Sun West's claims that:  (a) At some point before Sun West repurchased the loan from Fannie Mae, Sun West contacted First Alliance in an attempt to cure the aforesaid violation of Fannie Mae's guidelines (i.e., the borrower's insufficient cash reserves), and (b) "First Alliance was not able to provide any additional documentation" that would have achieved that objective.

7

contract and (2) indemnity. In the complaint, Sun West averred that First Alliance's breach of the broker agreement damaged Sun West "in an amount . . . no less than $80,000." In its prayer for relief, Sun West sought "damages in an amount according to proof at trial; [¶] . . . pre-judgment interest at the legal rate for all amounts owed; [¶] . . . an award of reasonable attorneys' fees pursuant to the Agreement; [¶] . . . costs of suit incurred herein; and [¶] . . . such other and further relief as the Court deems just and proper."

A one-day bench trial was held on May 29, 2019. On July 29, 2019, the trial court issued a tentative decision, wherein the court announced its intention to rule as follows: "[A]s to the first cause of action for breach of contract and the second cause of action for indemnity, the court finds in favor of [Sun West] and against [First Alliance]. [Sun West] will be awarded $73,077.13, pre-judgment interest, costs of suit and reasonable attorney fees. . . . Also, the parties are ordered to meet and confer to determine how and when the subject loan will be returned to [First Alliance] and what credit against the judgment, if any, should be allowed given that payments on the loan have been made." On August 20, 2019, the trial court issued a minute order in which it "adopt[ed] the Tentative Ruling and [found] in favor of Sun West . . . ."

On December 12, 2019, the trial court entered judgment in favor of Sun West (initial judgment). The initial judgment recited the following: "On September 24, 2019, First Alliance transferred to Sun West $72,634.00 to repurchase the subject loan. Sun West transferred back the subject loan to First Alliance and on October 22, 2019, transferred back the

8

escrow balance of $1,858.47 to First Alliance."[5]  The court decreed that "Sun West is entitled to pre-judgment interest at the rate of ten percent (10%) per annum on the amount awarded of $73,077.13 from May 8, 2014 to September 24, 2019," and that "Sun West is entitled to attorney's fees and costs in the amount of $174,660.90."  It further decreed that Sun West "is entitled to additional costs" and that "Sun West shall have and recover from First Alliance interest at the rate of ten percent (10%) per annum on any amounts outstanding under this Judgment from the date of entry of this Judgment until fully paid."  The initial judgment did not quantify the amount of the "additional costs" to which Sun West was entitled.  First Alliance appealed the initial judgment on January 2, 2020.[6]

On February 6, 2020, the trial court entered an amended judgment that is substantially similar to the initial judgment; the only apparent difference between the two judgments is that the amended judgment provides that Sun West is entitled to additional costs of "$4,400.01."  First Alliance appealed the

---

[5] Although neither party explains why First Alliance paid less than $73,077.13 to repurchase the loan from Sun West, the disparity may be attributed to the trial court's order requiring the parties to "meet and confer to determine . . . what credit against the judgment, if any, should be allowed given that payments on the loan have been made."

[6] Although First Alliance's counsel erroneously represented that "Plaintiff ASTRA PACIFIC OUTDOOR, LLC" was appealing a judgment purportedly entered on "August 6, 2019," Sun West concedes that this notice of appeal was filed on behalf of First Alliance and that it concerns the initial judgment.

amended judgment on March 9, 2020.  We later consolidated
First Alliance's appeals of the initial and amended judgments.

On July 9, 2020, the trial court entered a second amended
judgment that does not appear to differ in any material respect
from the amended judgment.[7]  On September 3, 2020, the trial
court entered a third amended judgment that is substantially
similar to the second amended judgment; the only apparent
difference between the two documents is that the third amended
judgment calculates the amount of prejudgment interest due
thereunder, to wit, $39,341.46.[8]

## STANDARDS OF REVIEW

"In reviewing a judgment based upon a statement of
decision following a bench trial, we review questions of law
de novo. [Citation.]  We apply a substantial evidence standard of
review to the trial court's findings of fact.  [Citation.]  Under this

---

[7] In their respective appellate briefs, neither party
identifies the differences between the various iterations of the
judgment that the trial court issued.

[8] Although First Alliance did not appeal the second
amended judgment or the third amended judgment, its failure to
do so does not affect our jurisdiction because First Alliance's
appellate claims concern only rulings included in the initial
judgment from which it timely appealed—i.e., the repurchase of
the loan, the $174,660.90 attorney fees and costs award, and the
method of calculating the prejudgment interest.  (See *Ellis v.
Ellis* (2015) 235 Cal.App.4th 837, 842–843 [holding that if an
appealing " 'party can obtain the desired relief from a judgment
before it is amended,' " then "any changes [included in an
amended judgment] are considered to relate back to the original
judgment and the time to appeal runs from the entry of the first
judgment"].)

deferential standard of review, findings of fact are liberally construed to support the judgment and we consider the evidence in the light most favorable to the prevailing party, drawing all reasonable inferences in support of the findings." (*Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981 (*Thompson*).)

"Judgments and orders granting or denying specific performance . . . are reviewed under an abuse of discretion standard" (*Petrolink, Inc. v. Lantel Enterprises* (2022) 81 Cal.App.5th 156, 165–166 (*Petrolink, Inc.*)), as are attorney fee awards (*Roth v. Plikaytis* (2017) 15 Cal.App.5th 283, 289–290 (*Roth*)). "[We also] review a trial court's determination on which costs are reasonably necessary and reasonable in amount under the abuse of discretion standard." (*Charton v. Harkey* (2016) 247 Cal.App.4th 730, 739 (*Charton*).) " 'The abuse of discretion standard is "deferential," but it "is not empty." [Citation.] "[I]t asks in substance whether the ruling in question 'falls outside the bounds of reason' under the applicable law and the relevant facts." ' [Citation.]" (*Roth, supra*, 15 Cal.App.5th at p. 290.)

"Determining whether the 10 percent interest rate of section 3289, subdivision (b) . . . applies is a question of law we review de novo." (*Carmel Development Co., Inc. v. Anderson* (2020) 48 Cal.App.5th 492, 525.)

" 'A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness.' [Citation.]" (*Thompson, supra*, 6 Cal.App.5th at p. 981.) Thus, " ' "it is the appellant's responsibility to affirmatively demonstrate error[,]" ' " and " ' "review is limited to issues which have been adequately raised and briefed." ' [Citation.]" (See *Los Angeles Unified School Dist. v. Torres Construction Corp.* (2020) 57 Cal.App.5th 480, 492

11

(*Los Angeles Unified School Dist.*).) " '[T]o demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record.' [Citation.]" (*Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277 (*Hernandez*).) The appellant bears this burden of rebutting the presumption of correctness accorded to the trial court's decision, regardless of the applicable standard of review. (See *Los Angeles Unified School Dist.*, at p. 492 [noting that these principles apply to " ' "an appeal from any judgment" ' "]; see also *Orange County Water Dist. v. Sabic Innovative Plastics US, LLC* (2017) 14 Cal.App.5th 343, 368, 399 [indicating that an appellant must affirmatively show the trial court erred even if the de novo standard of review applies].)

Additionally, " '[i]f the *decision* of a lower court is correct on any theory of law applicable to the case, the judgment or order will be affirmed regardless of the correctness of the grounds upon which the lower court reached its conclusion.' [Citation.]" (*Estate of Sapp* (2019) 36 Cal.App.5th 86, 104.)

## DISCUSSION

### A. First Alliance Fails to Establish the Trial Court Abused Its Discretion in Awarding Specific Performance to Sun West

First Alliance argues the trial court erred in granting specific performance of the broker agreement by ordering First Alliance to pay $73,077.13 and requiring Sun West to transfer the underlying loan back to First Alliance. In particular, First Alliance contends that Sun West did not request specific performance in its complaint, and that this remedy was improper because "damages were adequate and would have compensated

12

Sun West . . . ."  First Alliance insists the trial court should have instead awarded " 'benefit of the bargain' " damages, i.e., the difference between "the fair market value that Sun West paid to Fannie Mae which it had not anticipated having to pay" and "the fair market value of what Sun West received from Fannie Mae in exchange for that unanticipated payment."  (Some capitalization omitted.)  First Alliance claims this formula "yields . . . actual damages of only $5,236.72 . . . ."

As a preliminary matter, we assess the nature of the relief afforded to Sun West.  In its statement of decision, the trial court ruled that Sun West "will be awarded $73,077.13, pre-judgment interest, costs of suit and reasonable attorney fees," and it "ordered [the parties] to meet and confer to determine how and when the subject loan will be returned to" First Alliance.  In essence, the court ordered First Alliance to perform an obligation that Sun West claimed had been imposed by the broker agreement—i.e., the "repurchase of the [l]oan" at the "[r]epurchase '[p]rice' of $73,077.13 . . . ."  We agree with First Alliance that this ruling constitutes an order granting specific performance.[9]  (See 58 Cal.Jur.3d (2020) Specific Performance, § 1 ["An action for specific performance [is a suit in

_____

[9]  First Alliance also asserts that "specific performance is not a remedy that [Sun West] ever requested."  During the proceedings below, First Alliance contended that ordering it to pay Sun West to reacquire the loan "would only be appropriate if [Sun West] were suing for specific performance, which it has not done."  In its posttrial rebuttal brief, Sun West responded:  "[T]o the extent the Court views Sun West's relief as requesting specific performance, the Court has the authority to order that relief . . . ."  Thus, it does not appear that the trial court was acting sua sponte in awarding specific performance to Sun West.

13

which] one party to an agreement seeks to compel the other to perform as he or she agreed."]; see also *Petrolink, Inc., supra,* 81 Cal.App.5th at p. 165 [holding that "an order compelling a party to perform an affirmative act is inherently an order for specific performance," e.g., an order requiring the parties to complete "a property sale transaction"].)

Yet, we do not agree with First Alliance that the absence of a prayer for specific performance in the complaint precluded Sun West from obtaining this relief. Given that First Alliance answered the complaint, the trial court was authorized to "grant . . . any relief consistent with the case made by the complaint and embraced within the issue. . . . regardless of whether the theory upon which liability [was] sought to be imposed involve[d] legal or equitable principles." (See Code Civ. Proc., § 580, subd. (a).) Specific performance is an equitable remedy for breach of contract.[10] Furthermore, Sun West alleged in its complaint that the broker agreement obligated First Alliance to repurchase the loan, and Sun West sought "such other and further relief as the Court deems just and proper," thereby notifying First Alliance that Sun West could seek relief other than damages. Because specific performance is relief that is consistent with the case made by the complaint and embraced

---

[10] (5 Witkin, Cal. Procedure (6th ed. 2021), § 780 ["Specific performance is an alternative remedy; the cause of action is for breach of contract."]; *Wong v. Jing* (2010) 189 Cal.App.4th 1354, 1360, fn. 2 ["[S]pecific performance . . . [is an] equitable remed[y] and not [a] cause[ ] of action for injuries."].)

14

within the issues raised thereby, Sun West's failure to request that remedy in its pleading is immaterial.[11]

First Alliance intimates for the first time in its reply that had Sun West sought specific performance in the complaint, then First Alliance would have conducted discovery on entitlement to that relief. First Alliance waived this argument by failing to raise it in a timely fashion. (*Habitat & Watershed Caretakers v. City of Santa Cruz* (2013) 213 Cal.App.4th 1277, 1292, fn. 6 ["Arguments presented for the first time in an appellant's reply brief are considered waived."].) In any event, defense counsel's failure to undertake discovery on this question does not demonstrate that the trial court erred in granting specific performance, given that Code of Civil Procedure section 580 put counsel on notice that Sun West could obtain remedies other than those identified in the complaint and Sun West alleged in the complaint that the broker agreement obligated First Alliance to repurchase the loan. (See *Steinhart v. County of Los Angeles* (2010) 47 Cal.4th 1298, 1316 ["[A]ttorneys are 'charged with knowledge of the law in California.' "].)

In addition to its assertion that Sun West should have prayed for specific performance in the complaint, First Alliance also maintains that "specific performance was not lawfully

---

[11] (See *Wright v. Rogers* (1959) 172 Cal.App.2d 349, 367–368 ["[W]hen an answer is filed, the case becomes one in which the court is authorized regardless of the prayer to grant any relief consistent with the plaintiff's averments. The jurisdiction of the court to grant any particular relief depends not on the prayer but on the issues—that is, on the scope of the complaint and the issues made or which might have been made under it—and any relief consistent with the issues raised may be granted regardless of the prayer."].)

15

justified." " 'The basic rule is that . . . specific performance will be granted only when the legal remedy, such as an action for damages, is inadequate.' [Citation.]" (*Valley Crest Landscape Development, Inc. v. Mission Pools of Escondido, Inc.* (2015) 238 Cal.App.4th 468, 492.)

As Sun West points out in its briefing, Sun West's chief executive officer testified that if Sun West attempted to resell the loan to an entity other than First Alliance, then Sun West would have needed to execute a mortgage loan purchase agreement exposing Sun West to liability for "anything in the loan that [the buyer is] not aware of . . . or any misrepresentations" in the loan documents. This corporate officer further testified that Sun West sought to avoid incurring this liability. In response to Sun West's reliance on this evidence, First Alliance directs us to testimony from its own chief executive officer in which he stated his belief that First Alliance "could easily sell this [loan] without having to [agree to] indemnify" the purchaser of the loan.

Because granting or denying specific performance is a matter committed to the trial court's discretion (see *Petrolink, Inc.*, *supra*, 81 Cal.App.5th at pp. 165–166), the court was entitled to credit Sun West's evidence on this point and reject the testimony of First Alliance's chief executive officer. (See *In re Caden C.* (2021) 11 Cal.5th 614, 640–641 (*Caden C.*) [holding that when an appellate court reviews " 'the *factual basis* for an exercise of discretion,' " it "should 'not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts' "].) Moreover, First Alliance does not argue that the testimony from Sun West's chief executive officer falls short of establishing that an award of damages would have been inadequate. In sum, First Alliance has failed to discharge its

16

burden of affirmatively establishing the trial court abused its discretion in awarding Sun West specific performance of the broker agreement instead of " 'benefit of the bargain' " damages. (Capitalization omitted.) (See *Los Angeles Unified School Dist.*, *supra*, 57 Cal.App.5th at p. 492.)

## B. First Alliance Does Not Show the Trial Court Abused Its Discretion in Awarding Attorney Fees and Costs to Sun West

" '[T]he [attorney] fee setting inquiry in California ordinarily begins with the "lodestar," i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate.' [Citation.] 'The lodestar figure may then be adjusted, based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal services provided. [Citation.] . . . .' [Citation.]" (*Roth*, *supra*, 15 Cal.App.5th at p. 290.) " ' "Because the 'experienced trial judge is the best judge of the value of professional services rendered in his court,' we will not disturb the trial court's decision unless convinced that it is clearly wrong . . . ." ' [Citation.]" (*Ibid.*)

"All costs awarded to a prevailing party must be (1) incurred by that party, whether or not paid; (2) 'reasonably necessary to the conduct of the litigation rather than merely convenient or beneficial to its preparation'; and (3) reasonable in amount." (*Charton*, *supra*, 247 Cal.App.4th at p. 739.)

During the proceedings below, the trial court granted Sun West's motion for attorney fees and costs and awarded Sun West a total of $174,660.90, $160,000.00 of which were attorney fees, $8,784.70 of which were expert fees, and $5,876.20 were other costs. The court stated the attorney fee award was

"computed based on a blended rate of $400 per hour for 400 hours, which . . . is the reasonable amount to litigate this case."

First Alliance argues the $174,660.90 attorney fees and costs award is "exorbitant" because "the actual economic damage [is] less than approximately . . . $8,000," and "First Alliance . . . served an offer of compromise pursuant to [Code of Civil Procedure section] 998 in the amount of $8,000.00 'plus costs as allowed by the court,' that would have addressed reasonable attorneys' fees." First Alliance also contends that because "Sun West's damages predictably were . . . . less than one-third of the $25,000" ceiling on limited civil jurisdiction, the trial court should have denied costs or reduced the amount awarded pursuant to Code of Civil Procedure section 1033, subdivision (a).[12] These arguments are unavailing because they rely on First Alliance's flawed assertion that the trial court erred in ordering First Alliance to pay $73,077.13 to repurchase the loan.[13] (See Discussion, part A, *ante*.)

Furthermore, First Alliance alleges the trial court should have reduced the award of attorney fees and costs because it had a "good faith" defense. Specifically, First Alliance argues the

_____

[12] Code of Civil Procedure section 1033, subdivision (a) provides in pertinent part: "Costs or any portion of claimed costs shall be as determined by the court in its discretion in a case other than a limited civil case . . . where the prevailing party recovers a judgment that could have been rendered in a limited civil case." (Code Civ. Proc., § 1033, subd. (a).)

[13] For instance, First Alliance argues in its reply brief that "the inflated award of attorneys' fees clearly was unreasonable *given the amount of actual damages*." (Italics added; boldface & capitalization omitted.)

18

"sole" provision of the broker agreement the complaint alleged that First Alliance had breached was paragraph 5(f), which provision "explicitly required the absence of fault by Sun West." According to First Alliance, the trial court's statement of decision "specifically recognized that Sun West was involved in the underwriting, knew about the account deficiency at the closing, and . . . made the affirmative decision to proceed with the closing." First Alliance thus submits paragraph 5(f) "exonerated First Alliance," meaning "First Alliance's defense to this matter was reasonable."

First Alliance misreads the record. In its statement of decision, the trial court stated that although one exhibit "suggests that Sun West may have engaged in an underwriting function, the balance of the evidence shows that it was only First Alliance that served as the underwriter relative to the subject loan." The court deemed "credible and reasonable" the evidence showing that First Alliance was the sole underwriter. The court further stated that "even if Sun West personnel were engaged in tasks similar to those of an underwriter, they were not given information about the borrower's insufficient cash reserves until the time of closing." Consequently, the lower court ruled that "the contract provision that First Alliance seeks to invoke to avoid repurchasing the loan, i.e. that when Sun West makes a mistake, First Alliance is relieved of its repurchase obligation, is not applicable."

Under the deferential abuse of discretion standard of review applicable to First Alliance's claim of error (*Roth*, *supra*, 15 Cal.App.5th at p. 290; *Charton*, *supra*, 247 Cal.App.4th at p. 739), the trial court's finding that Sun West was not at fault vis-à-vis the loan transaction is conclusive. (See *Caden C.*, *supra*,

19

11 Cal.5th at pp. 640–641 [holding that a reviewing court may not reweigh the evidence in assessing the factual basis for a trial court's exercise of discretion].)  First Alliance's good faith defense argument thus fails.

For the foregoing reasons, we conclude that First Alliance has not shown the trial court erred in awarding $174,660.90 in attorney fees and costs to Sun West.

## C. First Alliance Fails to Demonstrate the Trial Court Erred in Awarding Prejudgment Interest to Sun West

The trial court awarded Sun West prejudgment interest at the rate of 10 percent per annum on $73,077.13, accruing from May 8, 2014, the date on which Sun West repurchased the loan from Fannie Mae, to September 24, 2019, the date on which First Alliance repurchased the loan from Sun West.  (See Factual & Procedural Background, parts 2–3, *ante*.)  First Alliance maintains that under Civil Code section 3289, prejudgment interest should have been calculated using the 4.5 percent rate owed by the borrower on the underlying loan and, because "it was always a fully performing loan," Sun West "was not entitled to any pre-judgment interest."  First Alliance further claims that "the award by the Trial Court of 10% interest in addition to the 4 ½% yielded Sun West actual interest received in the amount of 14 ½%," which "was clearly an error."  Additionally, First Alliance insists that, "even assuming for the sake of argument . . . Sun West was entitled to some additional interest, the interest would only apply to the minimal correctly calculated damages and not to the full amount paid by Sun West to Fannie Mae without any deduction for the value of the . . . [l]oan received by Sun West."

20

Civil Code section 3289 provides: "(a) Any legal rate of interest stipulated by a contract remains chargeable after a breach thereof, as before, until the contract is superseded by a verdict or other new obligation. [¶] (b) If a contract entered into after January 1, 1986, does not stipulate a legal rate of interest, the obligation shall bear interest at a rate of 10 percent per annum after a breach. [¶] For the purposes of this subdivision, the term contract shall not include a note secured by a deed of trust on real property." (Civ. Code, § 3289.)

It appears that First Alliance is claiming that Civil Code section 3289, subdivision (a) required the trial court to utilize the 4.5 percent interest rate owed by the underlying loan borrower, and that the court erred in instead utilizing subdivision (b)'s 10 percent rate to compute prejudgment interest. As Sun West points out in its respondent's brief, however, the 4.5 percent rate of interest is imposed by "a contract between Sun West and *the borrower*, not First Alliance." (Italics added.) This fact precludes First Alliance from invoking Civil Code section 3289, subdivision (a), given that this subdivision has been interpreted to provide that "the contractual rate *agreed upon by the parties* in the contract governs following a breach . . . ."[14] (See *Cavalry SPV I, LLC v. Watkins* (2019) 36 Cal.App.5th 1070, 1092, italics added; see also *Harm v. Frasher* (1960) 181 Cal.App.2d 405, 418 [rejecting the defendants' assertion that a prior version of Civil Code, § 3289, subd. (a) required the trial court to "use[ ] the contract interest rate of 5 per cent per annum" because "the plaintiffs [were] not suing the party who agreed to pay" that

---

[14] First Alliance does not claim that the broker agreement supplies an applicable prejudgment interest rate.

interest rate]; cf. *Cavalry SPV I, LLC*, at pp. 1075–1077, 1094–1095 [holding that Civil Code, § 3289, subd. (a) barred the holder of credit card debt from utilizing subd. (b)'s 10 percent prejudgment interest rate because the credit card agreement specified a different interest rate].) Accordingly, First Alliance fails to establish the trial court erred in employing the 10 percent rate provided in subdivision (b).

Sun West characterizes First Alliance's contention regarding the 14.5 percent interest rate as "a confusing argument about an offset on the interest amount." Sun West further argues that this argument is not properly before us because First Alliance "presented [it] without any citation to legal authority . . . ." In response, First Alliance argues in its reply brief that the "actual interest rate received of 14½% . . . . was clearly in excess of the . . . Civil Code §3289 rate and the award of that rate was an error."

We agree with Sun West that, aside from First Alliance's citation to Civil Code section 3289 in its opening and reply briefs, First Alliance does not supply any legal authority to support its argument that the trial court erroneously allowed Sun West to obtain "an actual interest rate" of 14.5 percent. Insofar as First Alliance is arguing that the trial court erred by awarding prejudgment interest at a rate that exceeds 4.5 percent, that contention fails because, as explained above, the rate charged to the borrower does not govern the prejudgment interest calculation as to First Alliance's breach of its contract with Sun West. To the extent that First Alliance maintains the interest Sun West collected from the borrower should have been subtracted from the award of prejudgment interest, 5First Alliance fails cogently to raise that argument and support

22

it with any pertinent legal authority.  (*Hernandez, supra*, 37 Cal.App.5th at p. 277 ["We may and do 'disregard conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusion he wants us to adopt.' "].)  Our declination to discuss this matter further rests largely on the principle that an appellant must provide a respondent with a reasonable opportunity to refute the appellant's claims of error.[15]  (Cf. *Hernandez*, at pp. 277–278 [" 'Fairness militates against allowing an appellant to raise an issue for the first time in a reply brief because consideration of the issue deprives the respondent of the opportunity to counter the appellant by raising opposing arguments about the new issue.' "].)

Lastly, First Alliance's argument that the prejudgment interest rate should have been applied to only "the minimal correctly calculated damages and not to the full amount paid by Sun West to Fannie Mae" is predicated on First Alliance's assertion that the trial court should not have granted specific performance to Sun West.  Given that this premise is flawed (see Discussion, part A, *ante*), we reject First Alliance's assertion that

---

[15]  As we noted in our Factual and Procedural Background, the trial court ordered the parties to "meet and confer to determine . . . what credit against the judgment, if any, should be allowed given that payments on the loan have been made," First Alliance later paid Sun West $72,634 to repurchase the loan, and Sun West thereafter transferred an escrow balance of $1,858.47 to First Alliance.  (See Factual & Procedural Background, part 3, *ante*.)  First Alliance does not argue, let alone offer evidence establishing, that these apparent reductions to the $73,077.13 repurchase price failed to account adequately for the interest payments that the borrower made to Sun West.

the trial court erroneously calculated the award of prejudgment interest.

## DISPOSITION

The judgment is affirmed.  Respondent Sun West Mortgage Company, Inc. is awarded its costs on appeal.

NOT TO BE PUBLISHED.

BENDIX, Acting P. J.

We concur:

CHANEY, J.

KELLEY, J.*

---

\* Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.