Filed 5/26/26  P. v. Lopez CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>BRYANT LOPEZ,<br><br>    Defendant and Appellant. | B337120<br><br>(Los Angeles County<br> Super. Ct. No. BA486237) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Sam Ohta, Judge.  Affirmed.

Cynthia Grimm, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Nicholas J. Webster and Amanda V. Lopez, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

Defendant Bryant Lopez was a member of the Boyle Heights gang. He and a fellow gang member shot and killed a rival gang member. A jury found Lopez guilty of first degree murder, shooting at an occupied motor vehicle, and assault with a semiautomatic firearm. The jury further found true firearm allegations. The trial court sentenced Lopez to 3 years plus 50 years to life in state prison. On appeal, Lopez raises instructional and sentencing errors. Lopez also asks that we review the sealed transcripts containing the trial court's review of police officer personnel files performed pursuant to *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*). He further requests that we review the sealed transcripts of an in camera proceeding regarding a privilege claim asserted by a police officer during a suppression hearing. We affirm the judgment.

## FACTUAL BACKGROUND

On March 17, 2020, Jose Falcon (the victim) was shot and killed by two armed men, who were later identified as Lopez and Matthew Hernandez.[1] At approximately 9:00 a.m. that day, the victim asked to use his friend Oscar Robledo's truck to charge his cell phone. Robledo gave the victim his keys. When the victim was inside the truck, the two gunmen approached. Robledo was nearby. Robledo described one gunman as "chubbier" and the other as "skinnier."

One of the gunmen said, "Where are you from," and "Boyle Heights," as if he was claiming allegiance to that gang. Robledo responded that he was a

---

[1] Hernandez and Lopez were tried before the same jury. Therefore, the factual background is taken almost entirely from our opinion in Hernandez's direct appeal. (*People v. Hernandez* (B335034, June 20, 2025) [nonpub. opn.].)

"paisa," meaning that he was not from the United States. The gunmen told the victim that they knew he was from White Fence, a rival gang. At some point, the chubbier gunman directed the skinnier one to get Robledo on his knees. The skinnier gunman pointed the gun at Robledo, who got down on the ground. The gunmen wanted the victim to remove his clothing, but he refused. They tried to force the victim out of the truck, but he resisted and kicked them in response.

When the victim did not exit the truck, the chubbier gunman opened the backdoor of the truck and started shooting at the victim. The skinnier gunman followed suit and began shooting as well. During the shooting, the victim was in the rear passenger seat of the truck. The medical examiner determined the victim had suffered 18 gunshot wounds, which included entry and exit wounds. He concluded the cause of death was multiple gunshot wounds and the manner of death was homicide.

Law enforcement responded to the crime scene. The victim was dead. Officers found 9-millimeter cartridge casings from a semiautomatic firearm and expended bullet fragments on the ground. There were bullet impacts to the rear, side windows, and body of the truck. A criminalist analyzed the truck and determined the pathways of the bullets. One bullet went through the bed of the truck. Several bullets entered the truck from the rear window, and others came from the right side exterior. A 9-millimeter cartridge casing was found in the side pocket of the door. A live 9-millimeter cartridge was found inside the center console of the truck.

The criminalist noted that one bullet traveled from inside to the outside of the truck, from the back to the front. The criminalist opined that if the truck's door was open at the time, then someone from the outside of the vehicle could have shot into the open doorway, which would explain the

trajectory of this particular bullet. She further stated that she found no evidence that would suggest there was someone shooting from inside the vehicle to the outside.

After the shooting, Hernandez posted a video on his Instagram account. In the video, he stated that he was in White Fence territory and to "check the scoreboard," which was a sports reference to the murder of a rival gang member. Hernandez said he was walking through a White Fence park wearing Boyle Heights' gang clothing. Hernandez was holding a handgun. Lopez was also seen on the video with Hernandez. Both Hernandez's and Lopez's gang tattoos were visible. There were various gang-related symbols displayed on Hernandez's Instagram account. There were also photos of Hernandez and Lopez holding guns and making a hand symbol representing the Boyle Heights gang.[2]

A gang expert testified about the Boyle Heights gang. The expert identified Hernandez as a member, known as "Scooby." Hernandez had various gang-related tattoos, including a large "B" for Boyle on his face. He also identified Lopez as a member, known as "Grande." The expert also testified about the White Fence gang and stated that Boyle Heights was its rival. White Fence had a larger territory and shared part of the southern border of Boyle Heights' territory. The victim had several White Fence gang-related tattoos. The murder occurred in White Fence territory and there was gang graffiti near the crime scene.

---

[2] At trial, Lopez did not testify or call any witnesses in his defense.

4

## PROCEDURAL HISTORY

A jury found Lopez guilty of first degree murder (Pen. Code, § 187, subd. (a), count 1),[3] shooting at an occupied motor vehicle (§ 246, count 2), and assault with a semiautomatic firearm (§ 245, subd. (b), count 4). As to count 1, the jury found true the firearm allegations under section 12022.53, subdivisions (b) through (d). As to count 2, the jury found true the firearm allegations under section 12022.5, subdivision (a) and section 12022.53, subdivision (d). As to count 4, the jury found true the firearm allegation under section 12022.5, subdivision (a).

The trial court sentenced Lopez to 3 years plus 50 years to life in state prison, calculating the sentence as follows. The court imposed 25 years to life for the first degree murder plus a consecutive 25 years to life for the firearm enhancement under section 12022.53, subdivision (d), but struck the remaining firearm enhancements (§ 12022.53, subds. (b), (c)). The court stayed the low term of 3 years for shooting at an occupied motor vehicle plus 25 years to life for the firearm enhancement (§ 12202.53, subd. (d)) under section 654, and struck the remaining gun enhancement (§ 12022.5, subd. (a)). The court imposed a consecutive low term of 3 years for assault with a semiautomatic firearm but struck the firearm enhancement (§ 12022.5, subd. (a)).

Lopez appealed.

---

[3] All further statutory references are to the Penal Code unless otherwise stated.

# DISCUSSION

I. *Jury Instructions*

A. *Perfect Self-Defense*

Lopez argues the trial court committed prejudicial error by denying his request to instruct the jury with perfect self-defense as a defense to both the murder and shooting at an occupied motor vehicle charges. We disagree.

"[Perfect] [s]elf-defense, when based on a reasonable belief that killing is necessary to avert an imminent threat of death or great bodily injury, is a complete justification, and such a killing is not a crime. [Citations.]" (*People v. Elmore* (2014) 59 Cal.4th 121, 133–134, italics omitted.) "For perfect self-defense, one must actually *and* reasonably believe in the necessity of defending oneself from imminent danger of death or great bodily injury. [Citation.]" (*People v. Randle* (2005) 35 Cal.4th 987, 994, overruled on other grounds by *People v. Chun* (2009) 45 Cal.4th 1172.) "A trial court is required to instruct sua sponte on any defense, including self-defense, only when there is substantial evidence supporting the defense, and the defendant is either relying on the defense or the defense is not inconsistent with the defendant's theory of the case. [Citation.]" (*People v. Villanueva* (2008) 169 Cal.App.4th 41, 49.)

Here, there was no evidence Lopez had a reasonable belief of imminent and immediate peril warranting a perfect self-defense instruction. There was no evidence that the victim threatened Lopez (or Hernandez) or initiated an altercation. Rather, Lopez (and Hernandez) approached the victim in rival gang territory, both with firearms in hand. They pointed their firearms at the victim and tried to forcibly remove him from the truck before opening fire, shooting him multiple times. It was Lopez (and Hernandez), not the victim, who initiated the deadly confrontation. Thus, there was simply no evidence

in the record that Lopez acted out of fear for his life or great bodily injury. (See *People v. Simon* (2016) 1 Cal.5th 98, 134 [finding no basis for a self-defense instruction where defendant "initiated [the] aggressive interactions," the victim "was unarmed," defendant "did not testify," and "there is no evidence [defendant] ever told anyone that he had acted out of fear"].)

Lopez's assertion that a round was fired by the victim inside the truck is mere conjecture. The criminalist acknowledged one bullet traveled from the interior of the truck through the exterior, back to front. She also opined that if the truck's door was open at the time, then someone from the outside of the vehicle could have shot into that portion, which would explain the trajectory of this particular bullet. According to the trial testimony, one of the gunmen opened the backdoor of the truck and began shooting the victim. This evidence corroborates the criminalist's assessment.

The criminalist further testified that she found no evidence that would suggest there was someone shooting from inside the vehicle. Moreover, no firearm was recovered from the victim. There was no eyewitness testimony of the victim brandishing a firearm, let alone testimony that he fired one. Neither Lopez nor Hernandez testified in their defense about such facts. It is also pure speculation by Lopez that "people" at the scene may have removed evidence. We conclude the trial court did not err in denying Lopez's request for a perfect self-defense instruction, and we reject Lopez's contention that the court's failure to provide this instruction violated his constitutional rights.

B. *Voluntary Manslaughter (Imperfect Self-Defense)*

Lopez argues the trial court committed prejudicial error by denying his request to instruct the jury on voluntary manslaughter as the lesser included offense of murder based on imperfect self-defense.

A trial court must instruct on lesser included offenses whenever the evidence raises a question whether all the elements of the charged offense have been established and there is evidence of a lesser offense which is "'substantial enough to merit consideration' by the jury. [Citations.]" (*People v. Breverman* (1998) 19 Cal.4th 142, 162 (*Braverman*), disapproved of on other grounds in *People v. Schuller* (2023) 15 Cal.5th 237, 260, fn. 7.) In this context, substantial evidence means evidence from which a jury composed of reasonable persons could conclude that the lesser offense, but not the greater, was committed. (*Braverman, supra*, 19 Cal.4th at p. 162.) The lesser included offense instruction should be given only "where there is substantial evidence to support it." (*People v. Burns* (2009) 172 Cal.App.4th 1251, 1256, citing *People v. DePriest* (2007) 42 Cal.4th 1, 50.) Thus, "the trial court need not instruct on a lesser included offense whenever *any* evidence, no matter how weak, is presented to support an instruction, but only when the evidence is substantial enough to merit consideration by the jury." (*People v. Barton* (1995) 12 Cal.4th 186, 195, fn. 4 (*Barton*).) Instruction is not required "when the evidence is 'minimal and insubstantial.' [Citation.]" (*Id.* at p. 201.) We apply a de novo standard of review. (*People v. Waidla* (2000) 22 Cal.4th 690, 733.)

Imperfect self-defense is a description of one type of voluntary manslaughter. (*Barton, supra*, 12 Cal.4th at pp. 200–201.) ""Under the doctrine of imperfect self-defense, when the trier of fact finds that a defendant killed another person because the defendant *actually*, but

8

unreasonably, believed he was in imminent danger of death or great bodily injury, the defendant is deemed to have acted without malice and thus can be convicted of no crime greater than voluntary manslaughter." [Citation.]'" (*People v. Manriquez* (2005) 37 Cal.4th 547, 581.) Like perfect self-defense, imperfect self-defense requires that "the fear must be of imminent harm." (*People v. Humphrey* (1996) 13 Cal.4th 1073, 1082; *People v. Viramontes* (2001) 93 Cal.App.4th 1256, 1262.) As discussed, there was no evidence of imminent danger of death or great bodily injury here. Thus, the trial court did not err in denying Lopez's request to instruct the jury on imperfect self-defense. In light of our conclusion, we reject Lopez's contention that the court's failure to provide this instruction violated his constitutional rights.

### C. *Ineffective Assistance of Counsel*

Lopez contends he received ineffective assistance of trial counsel due to counsel's failure to request a provocation instruction, either CALCRIM No. 522 or its predecessor, CALJIC No. 8.73.[4] CALCRIM No. 522 states, in pertinent part: "Provocation may reduce a murder from first degree to second degree. The weight and significance of the provocation, if any, are for you to decide. [¶] If you conclude that the defendant committed murder but was provoked, consider the provocation in deciding whether the crime was first or second degree murder." Similarly, CALJIC No. 8.73 provides: "If the evidence establishes that there was provocation which played a part in inducing an unlawful killing of a human being, but the provocation was not sufficient to reduce the homicide to manslaughter, you should consider the

---

[4] CALCRIM No. 522 and CALJIC No. 8.73 are pinpoint instructions and need not be given sua sponte. (*People v. Rogers* (2006) 39 Cal.4th 826, 880; *People v. Hernandez* (2010) 183 Cal.App.4th 1327, 1333.)

provocation for the bearing it may have on whether the defendant killed with or without deliberation and premeditation."

To establish ineffective assistance of counsel, Lopez bears the burden of showing both that counsel's performance was deficient, falling below an objective standard of reasonableness under prevailing professional norms, and that it is reasonably probable the verdict would have been more favorable to him absent counsel's error. (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1052–1053.) "We presume that counsel rendered adequate assistance and exercised reasonable professional judgment in making significant trial decisions." (*People v. Holt* (1997) 15 Cal.4th 619, 703.) We will reverse on the ground of ineffective assistance of counsel "'only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for his act or omission.'" (*People v. Zapien* (1993) 4 Cal.4th 929, 980.)

Here, Lopez has failed to demonstrate that there could have been no rational tactical purpose for his trial counsel's failure to request that the court instruct under CALCRIM No. 522 or CALJIC No. 8.73. As discussed above, there was no evidence that Lopez was provoked by the victim or that the victim was acting aggressively towards him. Rather, the evidence showed that the victim was killed in a coordinated and unprovoked attack. There was no evidence that the victim was armed. Thus, Lopez's counsel likely made a tactical decision that omitting a provocation instruction was in his client's best interest. Moreover, a provocation instruction would have conflicted with trial counsel's strategy. In closing arguments, Lopez's counsel focused on misidentification (i.e., Lopez was not one of the suspects) and that the police failed to properly investigate the murder. Because we are unable to hold trial counsel's performance deficient, we need not address Lopez's

10

prejudice argument.  Accordingly, we reject Lopez's ineffective assistance of counsel claim.[5]

II.     *Firearm Enhancement*

Lopez challenges the trial court's imposition of a firearm enhancement under section 12022.53, subdivision (d).  First, he argues that the court was unaware of its discretion to impose a lesser firearm enhancement.  And second, he claims the court abused its discretion in imposing this severe firearm enhancement, which violated his due process rights.  We reject each argument in turn.

A. *Additional Background*

As relevant here, Lopez was charged with, and the jury found true, firearm allegations under section 12022.53, subdivisions (b), (c), and (d) for his first degree murder conviction.  Prior to sentencing, Lopez requested that the trial court strike the firearm enhancement under subdivision (d) of that section, based on his lack of criminal history and youth.  The court refused to do so and imposed the indeterminate sentence.  The court then struck the 10-year enhancement under subdivision (b) and the 20-year enhancement under subdivision (c) of section 12022.53.

Prior to imposing the firearm enhancement, the trial court acknowledged Lopez's lack of criminal history and youthfulness at the time of the offense.  However, the court ultimately found that striking the firearm

---

[5] Lopez argues he was denied a fair trial due to the cumulative instructional errors.  Because we reject the individual claims of error, there is no cumulative error.  (*People v. Ramirez* (2021) 10 Cal.5th 983, 1020 [" 'Because we have found no error, there is no cumulative prejudice to evaluate' "]; *People v. Lopez* (2018) 5 Cal.5th 339, 371 [same].)

11

enhancement would endanger public safety and was not in the interests of justice. In support of its finding, the court noted the vulnerability of the victim, "who was trapped inside the car, unable to run away" and "the brazen manner in which the killing happened in a neighborhood in the morning when people were going to school or work." The court pointed to "the deliberate hunt for a person who the defendant considered to be an enemy," and "the vicious barrage of numerous bullets fired into the car at [the victim]." The court further stated that "[t]he mental state of a person who, for gang allegiance, hunts and kills another human being is a person who is an extreme danger to the public." The court concluded, "This type of coordinated and planned act of extreme violence through the use of firearms destabilizes the sense of safety and security in our communities and is clearly the type of act the Legislature had in mind when it enacted . . . section 12022.53." Therefore, "[i]n a case of this horrific magnitude of violence, . . . dismissal of the enhancement would clearly endanger public safety and is not in the interest of justice."

B. *Lesser Firearm Enhancement*

Lopez argues that the trial court was unaware of the scope of its discretion to impose one of the lesser section 12022.53 enhancements or even a section 12022.5 enhancement.[6]

"'Defendants are entitled to sentencing decisions made in the exercise of the "informed discretion" of the sentencing court. [Citations.] A court which is unaware of the scope of its discretionary powers can no more

---

[6] In the interest of judicial efficiency, we analyze the merits of Lopez's argument without addressing his ineffective assistance of counsel claim. (*People v. Williams* (1998) 61 Cal.App.4th 649, 657, citing, e.g., *People v. Marshall* (1996) 13 Cal.4th 799, 831.)

exercise that "informed discretion" than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's record.' [Citation.] In such circumstances, we have held that the appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.'" (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391; accord, *People v. Flores* (2020) 9 Cal.5th 371, 431–432; *People v. Yanaga* (2020) 58 Cal.App.5th 619, 625.) However, "we presume that a judgment or order of the trial court is correct, "'[a]ll intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown."'" (*People v. Giordano* (2007) 42 Cal.4th 644, 666.) Furthermore, remand is not required when it would be an idle act. (*People v. Flores, supra*, at p. 432, citing *People v. McDaniels* (2018) 22 Cal.App.5th 420, 425; accord, *People v. Jefferson* (2019) 38 Cal.App.5th 399, 409; *People v. Allison* (2019) 39 Cal.App.5th 688, 705–706.)

At the time of Lopez's sentencing the law was clear about what would happen when a "jury had also returned true findings of the lesser enhancements under section 12022.53, subdivisions (b) and (c)." (*People v. Morrison* (2019) 34 Cal.App.5th 217, 222.) In such a case, the decision to strike an enhancement under section 12022.53, subdivision (d) "would leave intact the remaining findings, and an enhancement under the greatest of those provisions would be mandatory unless those findings were also stricken in the interests of justice." (*People v. Morrison, supra*, at p. 222.) There is no basis for inferring the trial court did not understand this mechanism, merely because it did not discuss it explicitly on the record. Lopez advances no argument that persuades us otherwise. "In the absence of evidence to the contrary, we presume that the court 'knows and applies the correct statutory

13

and case law'" (*People v. Thomas* (2011) 52 Cal.4th 336, 361), and as stated, ""'error must be affirmatively shown'"" (*People v. Giordano, supra*, 42 Cal.4th at p. 666).

Contrary to Lopez's contention, remand is not warranted based on the California Supreme Court's decision in *People v. McDavid* (2024) 15 Cal.5th 1015 (*McDavid*). In *People v. Tirado* (2022) 12 Cal.5th 688 (*Tirado*), our Supreme Court held that a trial court could strike a section 12022.53, subdivision (d) enhancement and impose a lesser, *uncharged* firearm enhancement under section 12022.53, subdivision (b) or (c). (*McDavid, supra*, at p. 1030.) About a month after Lopez's sentencing, our Supreme Court issued its decision in *McDavid*, extending *Tirado* and holding that a trial court may also impose a lesser included, uncharged enhancement under *another statue* if supported by facts that were alleged and found true. (*Ibid.*) Therefore, after *McDavid*, the trial court had discretion to strike the section 12022.53 enhancements and impose lesser included enhancements pursuant to section 12022.5. We conclude that, whether or not the trial court was aware of this discretion at the time of resentencing, it undoubtedly would not have exercised it. Therefore, a resentencing hearing would be unnecessary.

As discussed above, there is no indication the court was unaware of its discretion to impose the lesser section 12022.53 firearm enhancements that had also been found true by the jury. The court's rejection of these alternatives makes clear it would not have imposed an alternative sentence under section 12022.5, subdivision (a), which authorizes imposition of sentences that are for less or the same number of years as found in section 12022.53. We note our Supreme Court has cautioned that "when the applicable law governing the defendant's sentence has substantively changed after sentencing, it is almost always speculative for a reviewing court to say

14

what the sentencing court would have done if it had known the scope of its discretionary powers at the time of sentencing." (*People v. Salazar* (2023) 15 Cal.5th 416, 425.)  However, here, there is no speculation involved because if the trial court declined to impose a 10- or 20-year firearm enhancement under section 12022.53, it would not have exercised its discretion to impose an even lesser firearm enhancement under section 12022.5.

C. *Imposition of the Firearm Enhancement*

Lopez contends that the trial court abused its discretion and violated his due process rights by declining to strike his firearm enhancement under section 12022.53, subdivision (d).

A court "may, in the interest of justice pursuant to [s]ection 1385 and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section."  (§ 12022.53, subd. (h); *Tirado, supra*, 12 Cal.5th at pp. 695–696.)  Section 1385, subdivision (c)(1) provides: "Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so."  Subdivision (c)(2) of section 1385 guides courts in exercising their discretion under subdivision (c) by, among other things, instructing courts that the presence of certain enumerated mitigating circumstances "weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety."  The statute further specifies: "'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others."  (§ 1385, subd. (c)(2).)

We review the trial court's determination not to strike the firearm enhancement for abuse of discretion.  (*People v. Mendoza* (2023) 88

15

Cal.App.5th 287, 298.)  This means we will affirm as long as the court exercised its sentencing discretion "in a manner that is not arbitrary and capricious, that is consistent with the letter and spirit of the law, and that is based upon an 'individualized consideration of the offense, the offender, and the public interest.'" (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.)  ""The burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary.  [Citation.]  In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review."" (*People v. Carmony* (2004) 33 Cal.4th 367, 376–377.)  The trial court's ""decision will not be reversed merely because reasonable people might disagree.  'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.'"" (*Id.* at p. 377.)  In other words, "a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Ibid.*)

Here, the trial court considered all the relevant information and made a reasonable decision not to strike the firearm enhancement.  The court considered various factors in mitigation, including Lopez's youth and his lack of criminal history, and concluded that the 25-year-to-life firearm enhancement was warranted based on the "horrific magnitude of violence" of the murder.  The court stated that Lopez "deliberate[ly] hunt[ed]" a rival gang member with Hernandez, the victim was particularly vulnerable, and Lopez brazenly fired a "vicious barrage of numerous bullets" at the victim in a neighborhood in the morning, with people headed to work or school.  The court also found that dismissing the enhancement "would clearly endanger public safety and is not in the interest of justice."  Given the court's careful

16

and thorough consideration, we conclude the court exercised its discretion "in a manner that is not arbitrary and capricious, that is consistent with the letter and spirit of the law, and that is based upon an 'individualized consideration of the offense, the offender, and the public interest.'" (*People v. Sandoval, supra,* 41 Cal.4th at p. 847.)

We discern nothing from the trial court's ruling that supports Lopez's assertion that the court applied an improper standard for assessing the danger to public safety. Specifically, Lopez cites to *Gonzales* to argue the court did not additionally consider future dangerousness, i.e., "how the dismissal of the enhancement will impact the length of the defendant's sentence." (*People v. Gonzalez* (2024) 103 Cal.App.5th 215, 228 (*Gonzalez*).) In *Gonzalez,* the defendant was sentenced to 50 years to life for first degree murder, plus 25 years to life for a section 12022.53, subdivision (d) enhancement. (*Gonzalez, supra*, at p. 220.) The trial court denied the defendant's request to dismiss the enhancement based on its finding the defendant "'presently . . . does represent a danger to society.'" (*Id.* at p. 224.) The Court of Appeal reversed, holding the trial court applied an incorrect legal standard. (*Id.* at p. 228.) It explained that in addition to the current dangerousness of the defendant, a sentencing court should also consider how dismissal of enhancements would impact the length of the defendant's sentence or parole eligibility, because a defendant "who has no prospect of release from prison until he is elderly" may pose less of a risk to public safety. (*Ibid.*)

*Gonzalez* is distinguishable. Nothing in this case indicates the trial court expressly limited its assessment to solely whether Lopez is currently dangerous. We thus must presume it considered the length of Lopez's sentence in making its determination, as there is nothing in the record that

17

establishes it did not. "We assume the trial court was aware of and followed applicable law." (*People v. Coleman* (2024) 98 Cal.App.5th 709, 724–725; see also *People v. Calhoun* (1983) 141 Cal.App.3d 117, 126 [a court's sentencing decision implies requisite subsidiary findings].) The court was not required to expressly state what time period it was relying on in considering whether to dismiss the enhancement. Indeed, if a trial court declines to dismiss an enhancement, it is not mandated to use any "particular language" in doing so. (*People v. Bravo* (2025) 107 Cal.App.5th 1144, 1157.) While "[s]ection 1385, subdivision (a), requires a trial court to state its 'reasons for [a] dismissal . . . orally on the record,' " there is no similar statutory requirement when a court declines to dismiss an enhancement. (*Ibid*.) Thus, a trial court need not make any express findings on the record for a reviewing court to find a proper exercise of discretion in denying a motion under section 1385. (*Carmony, supra*, 33 Cal.4th at p. 378 ["[w]here the record is silent" we affirm].)

The trial court's refusal to strike the firearm enhancement was within the bounds of reason and does not reflect any abuse of discretion. We reject Lopez's assertion that the trial court's decision violated his due process rights for this reason.

III. *Pitchess Hearing*

Before trial, Hernandez, Lopez's codefendant, filed a *Pitchess* motion seeking discovery of personnel information of several officers. After the trial court held in camera hearings on the requested materials, it ordered one incident disclosed with a protective order. On appeal, Lopez requests we independently review the in camera hearings to determine whether the *Pitchess* procedural requirements were followed.

18

A criminal defendant is entitled to the discovery of confidential police officer personnel records if the information contained therein is relevant to his ability to defend against the charge. (*Pitchess, supra*, 11 Cal.3d at pp. 537–538.) To obtain such records, the defendant must submit an affidavit showing good cause for the discovery. (Evid. Code, § 1043, subd. (b)(3).) A showing of good cause requires a defendant seeking *Pitchess* discovery "to establish . . . a logical link between [a proposed defense] and the pending charge" and "to articulate how the discovery being sought would support such a defense or how it would impeach the officer's version of events." (*Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1021.) Discoverable information is "limited to instances of officer misconduct related to the misconduct asserted by the defendant." (*Ibid.*; see *California Highway Patrol v. Superior Court* (2000) 84 Cal.App.4th 1010, 1021, italics omitted ["[D]ocumentation of past officer misconduct which is similar to the misconduct alleged by defendant in the pending litigation is relevant and therefore subject to discovery"].)

" 'When a defendant shows good cause for the discovery of information in an officer's personnel records, the trial court must examine the records in camera to determine if any information should be disclosed.' " (*People v. Anderson* (2018) 5 Cal.5th 372, 391, quoting *People v. Winbush* (2017) 2 Cal.5th 402, 424.) " '[T]o protect the officer's privacy, the examination of documents and questioning of the custodian should be done in camera . . . , and the transcript of the in camera hearing and all copies of the documents should be sealed.' " (*People v. Anderson, supra*, 5 Cal.5th at p. 391, quoting *People v. Mooc* (2001) 26 Cal.4th 1216, 1229.) An appellate court independently examines the record made by the trial court "to determine whether the trial court abused its discretion in denying a defendant's motion

19

for disclosure of police personnel records." (*People v. Prince* (2007) 40 Cal.4th 1179, 1285.)

We are not persuaded that review is required here because there is no indication that Lopez filed a *Pitchess* request or joined Hernandez's *Pitchess* request. Nonetheless, we have reviewed the sealed transcripts of the in camera proceeding. We conclude that the court complied with the procedural requirements of a *Pitchess* hearing, including an adequate description of the documents provided to it, and that the court did not abuse its discretion. (See *People v. Mooc, supra*, 26 Cal.4th at p. 1231.)

IV. *In Camera Review*

Prior to trial, Hernandez moved to suppress a video from his personal Instagram account. Hernandez argued that his Fourth Amendment right against unreasonable search and seizure was violated by the Los Angeles Police Department when Officer Keoni Smith, shortly after the murder, viewed an allegedly incriminating video on his Instagram account. During the hearing, the trial court denied Lopez's oral request to join his codefendant's motion, finding that he lacked standing. At the hearing, Officer Smith testified he created an Instagram account to connect with and befriend Hernandez. However, when asked about certain details about his Instagram account, Officer Smith asserted the privilege under Evidence Code section 1040. Thereafter, the trial court conducted an in camera proceeding regarding the validity of the privilege, which included further testimony from Officer Smith. The court ruled that the information was privileged under Evidence Code section 1040, subdivision (b)(2).[7] The court clarified that the

---

[7] "Evidence Code section 1040, subdivision (b)(2), authorizes the trial court to decline to disclose confidential records maintained by a public entity when it

20

"privilege relates to the name of the [Instagram] account and anything that would identify that account, such as photographs, videos, and images, that may be uploaded onto that account."

On appeal, Lopez requests that we conduct an independent review of the in camera proceedings to determine whether "any error" occurred. We agree with the Attorney General that Lopez lacked standing to join in Hernandez's motion because Lopez failed to demonstrate that he had a "legitimate expectation of privacy" in Hernandez's personal Instagram account. (See *United States v. Payner* (1980) 447 U.S. 727, 731.) It is undisputed that Hernandez's Instagram included an incriminating video of both defendants. However, " '[a] person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's . . . property has not had any of his Fourth Amendment rights infringed.' [Citation.]" (*People v. Workman* (1989) 209 Cal.App.3d 687, 695.) Lopez fails to articulate any legal argument to the contrary on appeal. In any event, we have reviewed the sealed transcript of the in camera hearing and find no error.

---

finds the 'necessity for preserving the confidentiality of the information . . . outweighs the necessity for disclosure in the interest of justice.'" (*People v. Landry* (2016) 2 Cal.5th 52, 73.)

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ZUKIN, P. J.

WE CONCUR:


MORI, J.


COGLIATI, J.*

---

*Judge of the Santa Cruz Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.